## IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF ILLINOIS

GREG CIMA, DIANA PEEK, LINDA )
McMAHON, MIKE BEARD, SHARON )
BEARD, JOHN BECKWITH, Jr., and )
STEPHEN JELLEN, individually and on )
behalf of all others similarly situated, )
                         )
         Plaintiffs, )
                         )
         v. )        Case No. 05-cv-4127-JPG
                         )
WELLPOINT HEALTHCARE )
NETWORKS, Inc., UNICARE NATIONAL)
HEATHCARE SERVICES, Inc., )
UNICARE ILLINOIS SERVICES, Inc., )
UNICARE HEALTH INSURANCE )
COMPANY OF THE MIDWEST, )
RIGHTCHOICE MANAGED CARE, Inc., )
and RIGHTCHOICE INSURANCE )
COMPANY, )
                         )
         Defendants. )

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

        This matter comes before the Court on Plaintiffs' Motion to Remand to State Court (Doc.

21).  Defendants filed an overlong response to this motion (Doc. 29) accompanied by a motion for

leave to file excess pages in that response (Doc. 30).  Plaintiffs filed an 11-page reply to defendants'

motion (Doc. 34).  Plaintiffs did not request leave to file a reply exceeding the 5-page limit on such

briefs and included arguments in their reply that defendants claim they failed to develop in their

motion to remand.  As such, defendants have filed a Motion to Strike Plaintiffs' "Relation Back"

Reply Argument (Doc. 37).  Plaintiffs filed a response to this motion (Doc. 46), to which Defendants

have replied (Doc. 47).

-1-

Defendants WellPoint Health Networks, Inc. ("WellPoint"), UniCare Illinois Services, Inc. ("Illinois Services"), RightCHOICE Managed Care, Inc. ("Missouri Care"), UniCare National Services, Inc. ("UniCare National") and RightCHOICE Insurance Company ("RightCHOICE Insurance") filed a motion to dismiss the complaint under Fed.R.Civ.P. 12(b)(6) soon after this action was removed to this court.  (Doc. 13).  UniCare Health Insurance Company of the Midwest ("Midwest") filed a separate motion to dismiss on August 2, 2005. (Doc. 26).  Instead of responding directly to these motions, plaintiffs moved to have both of these motions stricken under the law of the case doctrine.  (Doc. 28).  Defendants have responded to the motion to strike (Doc. 31) and plaintiffs have replied.  (Doc. 35).

## BACKGROUND

Defendants Missouri Care, UniCare National and RightCHOICE Insurance removed this action on June 28, 2005 pursuant to the new rules regarding diversity jurisdiction and removal incorporated into 28 U.S.C. §§ 1332 & 1453 by the Class Action Fairness Act of 2005, Pub.L. 109-2, 119 Stat. 4 (2005) ("CAFA").  Plaintiffs named these defendants in an amended complaint in a state court class action lawsuit in Jefferson County, Illinois, that plaintiffs filed June 3, 2005. Though plaintiffs filed an amended complaint in June 2005, this action had been pending in state court since 2003.  Plaintiffs Greg Cima, Diana Peek and Linda McMahon originally filed this action against defendants WellPoint and Illinois Services.  On May 3, 2005, the state court struck or dismissed all plaintiffs' claims and granted them leave to replead.  In their amended complaint, Cima, Peek and McMahon were joined by additional plaintiffs[1], and they named, for the first time, defendants Missouri Care, UniCare National, RightCHOICE Insurance and Midwest.  Defendants

---

[1] Mike Beard, Sharon Beard, John Beckwith, Jr., and Stephen Jellen.

claim the naming of these additional defendants, among other things, makes this action properly before this Court.

## ANALYSIS

Initially, the Court would like to clear up the matter of the overlong pleadings in this case. When one asks for leave to file a motion, prudence suggests that such motion should only be filed when leave is granted, not concurrently with the very motion seeking leave. The Court is mindful of the time pressures attorneys face when attempting to meet deadlines. In the future, however, the parties shall file such motions before the briefing deadline and not concurrently with the motion they request leave to file. Having analyzed the array of claims in plaintiffs' motion for remand, the Court finds that defendants' motion for leave to file a long brief was well-taken – aside from the fact that it was filed in an improvident manner. Therefore, the Court **GRANTS** the motion. Though plaintiffs failed to abide by the 5-page limit in their reply, the Court will not strike it. Both sides have manipulated the Court's rules in this action by failing to comply with the strictures of S.D. Ill. Local R. 7.1 in a number of instances. In the future, all local rules must be followed to the letter. The continued failure to follow court rules will result in a harsher sanction.

After dealing with those preliminary matters, the Court must deal with the parties' arguments on the remand issue. Plaintiffs put forth a host of arguments in their motion for remand and in their reply to defendants' response. They claim this action should be remanded as a result of defendants' failure to plead diversity jurisdiction in their notice of appeal. In addition, they argue that CAFA does not apply here and even if it does, any number of its exceptions apply. Defendants claim CAFA applies here, that none of its exceptions apply, and even if it does not apply, that they have an independent basis for removal under the Employee Retirement Income Security Act of 1974

("ERISA").  If CAFA applies, the Court must then determine whether its provisions permit removal here.  If CAFA does not apply, removal of this case was only proper, if at all, under ERISA.

CAFA only applies to suits commenced on or after February 18, 2005.  *Knudsen v. Liberty Mut. Ins. Co.*, 411 F.3d 805, 806 (7th Cir. 2005).  The question therefore, is the meaning of "commenced" in this context.  In *Knudsen v. Liberty Mut. Ins. Co.*, the Seventh Circuit held that a suit is commenced for CAFA purposes when it is filed in state court.  *Id.* (citing *Pritchett v. Office Depot, Inc.*, 404 F.3d 1232 (10th Cir. 2005)).  The Court rejected defendants' argument that any substantial or significant change in a case was sufficient to commence an action under CAFA.  *Id.* In dicta, however, the Court noted that:

> a new claim for relief (a new 'cause of action' in state practice), the addition of a new defendant, or any other step sufficiently distinct that courts would treat it as independent for limitations purposes, could well commence a new piece of litigation for federal purposes even if it bears an old docket number for state purposes.

*Knudsen*, 411 F.3d at 806.  The Court suggested, though did not hold, that this determination should be modeled on Fed.R.Civ.P. 15(c).  In subsequent cases however, the Seventh Circuit has said that "state rather than federal practice must supply the rule of decision" when determining whether a claim relates back.  *Schorsch v. Hewlett-Packard Co.*, 417 F.3d 748, 750 (7th Cir. 2005).  To be clear, the Court notes that the specific issue before it is not the relation back of claims, but the relation back of parties. Thus, in determining whether this suit is properly removable under CAFA, this Court should look to whether the amendment adding Missouri Care, UniCare National, Midwest and RightCHOICE Insurance as defendants would "relate back" for limitations purposes under Illinois law.[2]

---

[2]The Seventh Circuit has repeatedly suggested that the addition of a "new" defendant could commence an action under CAFA.  However, there has not been a case in this Circuit in

-4-

Whether this case commenced for CAFA purposes by the addition of these defendants is the key question in determining the propriety of a remand here.  This question is complicated by the fact the plaintiffs devoted little argument to this precise issue in their original motion.  The argument is so sparse, claim defendants, that plaintiffs have waived it.   Plaintiffs developed their relation back argument in a somewhat convoluted manner, beginning with a discussion of two arguably irrelevant cases out of the Ninth Circuit,  *Samura v. Kaiser Found. Health Plan*, *Inc.*, 715 F.Supp. 970, 971 (N.D. Cal. 1989) and *Cantrell v. Great Republic Ins. Co.*, 873 F.2d 1249 (9th Cir. 1989), which are based upon the application of the second paragraph of § 28 U.S.C. 1446(b).  Plaintiffs then made the following argument:

> *Samura* noted remand was proper in the case and in *Cantrell*, under facts similar to the case here, where new defendants were in a "plainly" similar position, having the same counsel, and "being part of a group of closely affiliated entities." . . . Thus, adding these new affiliated defendants relates back to the original complaint.

(Doc. 21, at 7).  Defendants claim plaintiffs waived this argument because they did not discuss the elements of the relation back doctrine and included no application of the doctrine with the facts of this case.   In response, plaintiffs claim that *the* major point of their motion is that the amended complaint was not "new" for CAFA purposes.  Further, plaintiffs argue they were responding (in their reply) to defendants' arguments under *Schorsch* in their response to plaintiffs' motion to remand.  Defendants are correct that courts often hold that the failure to develop an argument results in its waiver.  *See, e.g., Central States, Southeast and Southwest Areas Pension Fund v. Midwest*

---

which the Court has actually applied this suggestion.  For example, in *Schillenger v. Union Pacific Railroad Co.*, 425 F.3d 330, 333 (7th Cir. 2005), the Court reiterated the potential for removal under CAFA if a new defendant were to be named after February 18, 2005.  In that case, however, the Court did not need to so hold, because in reality, a scrivener's error had led to the improper addition of a party in the amended complaint.  *Id.*

*Motor Express, Inc.*, 181 F.3d 799, 808 (7th Cir. 1999).  However, the Court will not apply this rule here for a couple of reasons.  First, plaintiffs raised the argument in their initial motion, though in a limited fashion.  Second, this argument goes directly to whether the Court has subject matter jurisdiction over this action.  If the Court were to disregard this argument, it would be disregarding the key analysis under which the Seventh Circuit has indicated that courts should determine when a suit commences under CAFA.  Further, defendants devoted several pages in their response to *Schorsch* and *Adams v. Federal Materials Co., Inc.*, Civ.A. No. 5:05CV90-R, 2005 WL 1862378, at * 1 (W.D. Ky. July 28, 2005), two cases that were decided on the very grounds which defendants claim plaintiffs have waived.  In any event, defendants have responded to these arguments in detail in their motion to strike, which, incidentally might easily be characterized as a prohibited sur-reply. *See* S.D. Ill. Local R. 7.1.  To consider plaintiffs' arguments on the motion to strike would not be unfair or prejudicial to defendants, as they have briefed the issue extensively.  Defendants' motion to strike the relation back argument is **DENIED**.

A longstanding and fundamental principle in removal practice has been that courts should construe the removal statutes narrowly and against removal.  *See, e.g., Illinois v. Kerr-McGee Chem. Corp.*, 677 F.2d 571, 576 (7th Cir. 1982). Defendants argue in their brief that CAFA changed the burden on remand.  After the parties submitted their briefs on plaintiffs' motion to remand, the Seventh Circuit held that CAFA does not alter the normal burdens in removal practice. *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 448-49 (7th Cir. 2005). Therefore, the normal rules apply under CAFA.

Plaintiffs ground their motion for remand, in a broad sense, upon the fact that this action is not new.  The parties have conducted significant discovery under the supervision of the state court,

have briefed the class certification motion and have already litigated to conclusion at least one motion to dismiss – the motion which led to the striking of the original complaint. In another sense, the action is not new, claim plaintiffs, because the additional defendants named in the amended complaint are all subsidiaries or affiliates of the primary defendant in the original action, WellPoint. They point out that they added these defendants after the state judge held that plaintiffs failed to plead the relationship among the entities involved in this litigation.

This case presents two primary questions. First, whether defendants named for the first time in an amended complaint filed after CAFA's effective date may remove the action when plaintiffs filed their original complaint before CAFA's effective date. If answered in the affirmative, the Court must then determine a second issue – whether the analysis of the first question would change if the additional defendants were corporate entities affiliated with a defendant named in the original, pre-CAFA complaint. Defendants assert that the answer to both questions is yes. First, they claim that as a general rule, under CAFA and as a basic precept of removal practice, a defendant first named in an amended complaint can remove the action to federal courts without regard to the right of the original party to remove. *See Knudsen*, 411 F.3d at 807. As a corollary to this argument, they claim that the Court need not engage in the relation back analysis suggested in *Knudsen* because a careful reading of the *Knudsen* suggests that a newly named defendant has the right to remove, regardless of whether it would relate back for limitations purposes. This view is bolstered, say defendants, by the fact that the Seventh Circuit only discussed the relation back of claims and not of parties in *Knudsen*. Defendants' reading finds some support in 28 U.S.C. § 1446(b). The second paragraph of this section states:

> if the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or

> otherwise, of a copy of an amended pleading . . . from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after the commencement of the action.

28 U.S.C. § 1446(b).  In class actions, the one-year limitation cited above does not apply.  *See* 28 U.S.C. § 1453.  Under § 1446(b), the right to remove an action not originally removable, but which becomes removal has been long recognized by federal courts, *see, e.g., Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68-69 (1996), though some courts have held that removal is only allowed when the later development justifying removal results from a plaintiff's own voluntary act. *See, e.g., Debry v. Transamerica Corp.*, 601 F.2d 480, 486-88 (10th Cir. 1979).

 As a case in point on the first issue, defendants cite *Adams v. Federal Materials Co.*; a case where the district court in the Western District of Kentucky, citing *Knudsen* and 1446(b), denied plaintiffs' motion for remand, based on its finding that the addition of a new defendant into the case made it properly removable despite the fact that suit was originally filed in state court before CAFA went into effect. *Adams*, 2005 WL 1862378, at *4.  According to the Court, this was "both a logical extension of pre-existing removal practice and in keeping with the general intent of congress in passing the CAFA – that is, extending the privilege of removal to federal district courts to defendants in large class actions on the basis of minimal diversity." *Id*.  This analysis appears to apply here as well.  Defendants also point the Court to the circumstances in *Knudsen*, where the Seventh Circuit remarked that if the plaintiffs were to add Liberty Mutual Insurance Company's "corporate sibling," Liberty Mutual Fire Insurance Company, Liberty Mutual Fire Insurance Company "could enjoy a right to remove under the 2005 Act, for suit *against it* would have been commenced after February 18, 2005." *Knudsen*, 411 F.3d at 807-08.  Though the court made this statement in a different context and in dicta, defendants believe it is worth consideration because the

-8-

Court implicitly suggested that this general rule is no different as applied to affiliated corporations.

Before plaintiffs filed the amended complaint, there was no basis for removal. When plaintiffs filed the amended complaint adding new defendants, defendants first ascertained that the action might be removable. Plaintiffs claim this case is different because the new defendants are merely affiliates or subsidiaries of WellPoint. In support of this proposition, plaintiffs cite *Samura* and *Cantrell*. These cases are distinguishable. In *Samura*, the court held that the addition of new defendants "does not start the time for removal running anew when the original complaint was removable." 715 F.Supp at 971. Similarly, in *Cantrall*, the Ninth Circuit held that the addition of a defendant did not justify removal under 28 U.S.C. § 1446(b) when that defendant had actively participated in the litigation and its formal addition as a party did not create a new basis for federal jurisdiction. 873 F.2d at 1255-56. *Samura* and *Cantrall* were controlled by the plain terms of § 1446(b) – the naming of additional defendants in those cases did not create a *new* basis for federal jurisdiction – not by the fact that defendants were affiliated.

In their reply, plaintiffs also cite *Eltman v. Pioneer Comm'ns of Am., Inc.*, 151 F.R.D. 311, 318 n.15 (N.D. Ill. 1993), *Higgins v. Kentucky Fried Chicken*, 953 F.Supp. 266, 270 (W.D. Wis. 1997) and *Phoenix Container, L.P. ex rel. Samarah v. Sokoloff*, 83 F.Supp. 2d. 928, 933 n.3 (N.D. Ill. 2000), in support of their argument. Their citation of these cases seems to be an ill-founded attempt to invoke the so-called identity of interest exception to the relation back doctrine. These cases deal with separate issues, and in any event, the identity of interest doctrine applies in a different context altogether, which the court will explore *infra*. *Eltman* dealt with the existence of a mandatory "first-served defendant rule" under § 1446(b). 151 F.R.D. at 316-17. The court addressed whether § 1446(b) bars a later-served defendant from removing a case when an earlier-

served defendant failed to remove during the initial 30-day period. *Id*. at 316. After considering the question, and noting the conflict among the major federal procedure treatises, the Court determined that 1446(b) does not include a mandatory first-served defendant rule. *Id*. In a footnote to the opinion, the Court mused that "in certain instances it may not be appropriate to allow the later-named defendant to remove the action. The rationale for preserving the later-served defendant's removal right would not apply, for example, in instances when defendants are actually part of the same operating entity rather than separate and distinct entities." *Id*. at 318 n.15. In *Higgins* and *Sokoloff*, the courts adopted and applied the first-served defendant rule – holding that a later-served defendant does not enjoy the right to remove when an earlier-served defendant could have, but failed to exercise its right to remove. *Sokoloff*, 83 F.Supp. 2d at 932; *Higgins*, 953 F.Supp at 269-70. These cases are of little value here. The fist-served defendant rule "rests on the long-established principle that all defendants who may properly join in the removal petition must join." *Sokoloff*, 83 F.Supp. at 932 (internal citations and quotation marks omitted). CAFA has removed the requirement that all defendants must consent to removal, so it vitiates the rationale behind the rule insofar as it applies to class actions removed after its effective date. Thus, it seems like plaintiffs have little more support in the case law of this circuit than rather vague dicta contained in a footnote to a district court opinion from 13 years ago. This is not as much a slight on plaintiffs' position as it is a reflection of the dearth of case law applying CAFA, given its recent enactment.

The Court finds the application of the *Knudsen* dicta in *Adams* persuasive on the general notion that a defendant named after February 18, 2005 has a right to remove an action to federal court. In a very real sense,

> Such removal does not start the case over because there is no case against the later-named defendant until he is named. There is no waste because judicial

> resources have not yet been expended. There is no delay because the case against that defendant has just begun. And there is no jockeying for tactical advantage because the "lateness" of the removal petition is due to the fact that the *plaintiff* did not name that defendant earlier.

*Eltman*, 151 F.R.D. at 317. This rationale does not carry the same force here. Plaintiffs' concerns about the removal of this case are indeed quite troubling. The parties have engaged in significant litigation at the state level and have conducted some discovery. If the parties litigated this dispute with the same contentiousness shown since defendants removed this action to federal court, the state court certainly expended significant judicial resources. Further, because the defendants here are related, and are represented by the same counsel, the amendment could be regarded as nominal only – in the literal and common sense of the term. In spite of this, it is not exactly clear why plaintiffs chose to add the additional defendants. Plaintiffs seem to suggest Judge Timberlake *ordered* them to add additional defendants in the amended complaint. Nothing from his order suggests this. Judge Timberlake dismissed plaintiffs' original complaint for, among other things, plaintiffs' failure to plead specific facts regarding the mergers of the entities involved in the original litigation. (Doc. 21, ex. 1). This does not amount to an order requiring the naming of additional defendants. Though pure speculation, perhaps plaintiffs added the WellPoint affiliates because it was their actions that give rise to the liability asserted in plaintiffs' amended complaint. If this is the case, then changing the parties to the action could have significance given the rules on the liability of a parent for its affiliates and subsidiaries. In Illinois, as in other states, "a parent, subsidiary, or other affiliate, qua affiliate, is not liable for a corporation's debt." *Browning-Ferris Industries of Illinois, Inc. v. Ter Maat*, 195 F.3d 953, 959 (7th Cir. 1999). In the same vein, parents are not liable for the torts of their wholly owned subsidiaries unless there is a basis for piercing the corporate veil. *IDS Life Ins. Co. v. SunAmerica Life Ins. Co.*, 136 F.3d 537, 540 (7th Cir. 1998). Plaintiffs use language in their

amended complaint suggesting an "alter ego" relationship of the type recognized in veil piercing cases. However, this is not an argument asserted in their briefs on the propriety of remand. Plaintiffs' concerns trouble the Court, but do not persuade it that CAFA is necessarily inapplicable. Whether or not a newly named defendant may remove an action to federal court without regard to the relation back doctrine in the normal case, the Court believes that the application of that doctrine here is a suitable mechanism for resolving the dispute before it now.

Under Illinois law, the addition of a new party relates back to the filing of the original complaint

> if all the following terms and conditions are met: (1) the time prescribed or limited had not expired when the original action was commenced; (2) the person, within the time that the action might have been brought or the right asserted against him or her plus the time for service permitted under Supreme Court Rule 103(b), received such notice of the commencement of the action that the person will not be prejudiced in maintaining a defense on the merits and knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him or her; and (3) it appears from the original and amended pleadings that the cause of action asserted in the amended pleading grew out of the same transaction or occurrence set up in the original pleading, even though the original pleading was defective in that it failed to allege the performance of some act or the existence of some fact or some other matter which is a necessary condition precedent to the right of recovery when the condition precedent has in fact been performed, and even though the person was not named originally as a defendant. For the purpose of preserving the cause of action under those conditions, an amendment adding the person as a defendant relates back to the date of the filing of the original pleading so amended.

735 ILCS 5/2-616(d). Again, the Court must concern itself with the placement of the burden. Under Illinois law, the plaintiff bears the burden of demonstrating that the addition of an additional party relates back to the filing of the initial complaint. *Morton v. Madison County Nursing Home Auxiliary*, 761 N.E.2d 145, 149 (Ill. 2001). It is unclear where this burden should be placed when the relation back doctrine is used as a proxy to determine whether the addition of new defendants

-12-

in an amended complaint commences a new action under CAFA. However, given the normal stance in removal cases, the Court finds that the burden is properly on defendants. *See Brill*, 427 F.3d at 448-49. That being said, it is clear that statutory requirements (1) and (3) are met in this case. Defendants suggest, however, that plaintiffs cannot demonstrate that their failure to name the additional defendants was a "mistake" as that term is used in the statute. Plaintiffs did not discuss the mistake requirement – which, incidentally, is a requirement under Rule 15(c) as well – because plaintiffs discussed the theory in terms of the relation back of claims and not of parties.

Plaintiffs did invoke this doctrine in a sense by referencing a line of cases in the Northern District of Illinois, which have construed the mistake prong under F.R.Civ.P. 15(c) as a prudential, rather than an absolute requirement under the relation back doctrine. *See United States v. Pickus Const. & Equip.*, No. 98 C 3261, 2000 WL 190574, at *5-6 (N.D. Ill. Feb. 9, 2000) (unpublished order). This line, which apparently began with *Hampton v. Hanrahan*, 522 F.Supp. 140, 145 (N.D. Ill. 1981), is based on the policy animating the relation back doctrine, expressed in *Hampton* as "to ensure that the statute of limitations is not used mechanically to prevent adjudication of claims where a real party in interest was sufficiently alerted to the proceedings, or was in involved in them in a practical sense from an early stage." This position arguably runs contrary to the Supreme Court's position in *Schiavone v. Fortune*, 477 U.S. 21, 29 (1986), where the Court held that "relation back is dependent upon [the] four factors [in 15(c)], all of which must be satisfied." In any event, the Seventh Circuit has dictated a more rigid application of the mistake requirement. *See King v. One Unknown Federal Corr. Officer*, 201 F.3d 910, 914 (7th Cir. 2000); *Eison v. McCoy*, 146 F.3d 468, 472 (7th Cir. 1998); *Baskin v. City of Des Plaines*, 138 F.3d 701, 704 (7th Cir. 1998).

Plaintiffs cited *Pickus* in the context of its argument that the addition of defendants here

-13-

relates back under the identity of interest exception.  A number of circuits have adopted this exception.  *In re Allbrand Appliance & Television Co., Inc.*, 875 F.2d 1021, 1025 (2d Cir. 1989) (citing *Korn v. Royal Caribbean Cruise Line, Inc.*, 724 F.2d 1397 (9th Cir. 1984); *Montalvo v. Tower Life Bldg.*, 426 F.2d 1135 (5th Cir. 1970); *Travelers Indem. Co. v. United States*, 382 F.2d 103 (10th Cir. 1967)).  In *Allbrand*, the Court expressed doubt as to the propriety of such an exception, though it assumed for purposes of decision that it did exist.  *Allbrand*, 875 F.2d at 1025.  It found the doctrine inapplicable there, based on its finding that the parent-subsidiary relationship standing alone is insufficient for its application.  *Id*. ("Courts accepting that rationale have required substantial structural and corporate identity, such as shared organizers, officers, directors, and offices.").  The Seventh Circuit has applied this principle sparingly over the years.  *See, e.g., Norton v. Int'l Harvester Co.*, 627 F.2d 18, 21-22 (7th Cir. 1980).  When that Court has applied the exception, it has been clear that it applies to the notice prong of the federal test and that a plaintiff is not entitled to the benefit of this exception if it cannot meet the mistake prong of Rule 15(c).  *See Norton*, 627 F.2d at 21-22; *Wood v. Woracheck*, 618 F.2d 1225, 1230 (7th Cir. 1980).  In any event, the Seventh Circuit has held that state practice governs the relation back analysis.

The mistake requirement under § 2-616(d) contemplates the situation where a plaintiff names the wrong defendant as a result of a mistake in the proper defendant's identity.  *Polites v. U.S. Bank Nat'l Ass'n*, 836 N.E.2d 133, 139 (Ill. App. Ct. 1st Dist. 2005).  To determine whether a plaintiff has made this kind of mistake, a court must look to plaintiff's intent when filing the lawsuit.  *Id*.  In *Pruitt v. Pervan*, 825 N.E.2d 299, 302-03 (Ill. App. Ct. 1st Dist. 2005), another case dealing with the mistake prong of the relation back test, the Court made clear that mistake in this context means mistaken identity.  There a plaintiff who slipped and fell at a building sued the company that

-14-

managed the property but failed to sue the building's owner. *Id*. at 302.  The plaintiff was not

mistaken that the original defendant managed the property; she chose to name that party because she

believed it was responsible for her injuries. *Id*. at 303 ("Her mistake was the assumption that only

the management company was liable for her injury.").  The Court distinguished the facts of that case,

from a true case of mistaken identify, where a plaintiff believes a defendant's first name is X (and

named the defendant as such in the complaint), when in fact, his name was Y. *Id.* at 302.  Under

those circumstances, the mistake prong is met. *Id*.  Importantly, the Court noted that an amendment

of § 2-616(d) in 2002 was intended to make the test more stringent – like the federal rules – than the

previous inadvertence standard. *Id*.  Under the inadvertence standard, one Illinois court said "if a

plaintiff has been made aware of the identity of a defendant before the expiration of the limitations

period, but fails to amend the complaint to add that defendant until after the period runs, then the

failure to join the defendant is not inadvertent." *Tatara v. Peterson Diving Service*, 670 N.E.2d 789,

794 (Ill. Ct. App. 1st Dist. 1996) ( "The plaintiff must act with reasonable diligence once he learns

facts sufficient to lead him to the proper defendant.").  Federal courts have echoed these ideas as

well. *King*, 201 F.3d at 914.  The key inquiry is the same in both state and federal court:  whether

a plaintiff mistook the identity of the defendant when filing the complaint.  Importantly, it is

"irrelevant for [relation back purposes] whether the purported substitute party knew or should have

known that the action would have been brought against him." *Baskin*, 138 F.3d at 704.

Here, plaintiffs were aware of the existence of at least one additional party, if not all

additional parties, at the time they filed suit.  In paragraph 2 of the complaint, plaintiffs alleged that

they are "former health insurance policy holders of RightCHOICE health insurance."  Obviously,

they were aware that the original policies came from an entity they did not name in the complaint.

Further, defendants argued in May 2003 that plaintiffs had failed to name the party who originally issued their policies in the first place.  (Doc. 29, pt. 12).  The Illinois Court of Appeals decision in *Tatara v. Peterson Diving Service* is informative on this issue.  In that case, the court rejected plaintiff's argument that his confusion regarding the corporate structure of the defendant and an affiliated corporation excused plaintiff's failure to name the correct defendant. 670 N.E.2d at 795. This was based on the court's finding that "the plaintiff had both the knowledge and the opportunity to name the defendant before the expiration of the statute of limitations, but failed to act."  *Id*. *Tatara* controls here.  Plaintiffs had knowledge of at least one affiliate, and probably the others, from the beginning of this litigation and did not include them.  WellPoint argued in its motion to dismiss in May 2003 that plaintiffs had sued the wrong entities.  Given that defendants made this argument at an early stage in the proceedings, plaintiffs certainly had an opportunity to add additional defendants.  Corporate affiliation does not change this analysis.  *See Tatara*, 670 N.E.2d at 795. Further, to the extent Illinois recognizes the identity of interest exception, that doctrine's applicability does not relieve the plaintiff from showing that the failure to name such party was a mistake.  *See Polites*, 836 N.E.2d at 147.  Under Illinois law, plaintiffs' addition of the WellPoint affiliates would not relate back for statute of limitations purposes.  Though the relation back analysis comes from state law, this result would be the same under federal law.  As previously stated, the identity of interest exception is irrelevant if a plaintiff cannot meet the mistake prong.  *See Norton*, 627 F.2d at 21-22; *Wook ,* 618 F.2d at 1230.  Defendants have no reasonable argument on the mistake prong.  The addition of the defendants in the amended complaint does not relate back.  It cannot be forgotten that  it was a conscious choice by plaintiffs (really their counsel) to name the additional defendants.  Whether for good or ill, they must accept the consequences of that choice.

-16-

The Court is cognizant of the duplication of judicial efforts that this conclusion may cause. However, this decision does not have the consequences that attend the normal application of the relation back analysis. Plaintiffs are not deprived of the relief they seek, they are just forced to seek it in a different forum. After carefully considering the arguments of the parties, the Court concludes that adding the new defendants in the amended complaint commenced, for CAFA purposes, suit against the newly named defendants. Thus, the Court will determine whether remand is proper for the other reasons stated in plaintiffs' motion to remand and reply.

Plaintiffs have asserted that this case is not removable under the local controversy exception, 28 U.S.C. § 1332 (d)(4)(A) and the home state exception, 28 U.S.C. § 1132(d)(4)(B). Under the local controversy exception, a court must decline jurisdiction over a class in which more than two-thirds "of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;"

> at least one defendant is a defendant . . . from whom significant relief is sought by members of the plaintiff class; . . . whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and . . . who is a citizen of the state in which the action was originally filed; and . . . principal injuries resulting from the alleged conduct of any related conduct of each defendant were incurred in the state in which the action was originally filed; and . . . during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons.

28 U.S.C. § 1332 (d)(4)(A). Under the home state exemption, a district court shall not exercise jurisdiction over a class action in which "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the state in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(B). Defendants claim plaintiffs' attempt to characterize this as a local dispute is belied by the allegations in their complaint. In plaintiffs' amended

complaint, they define the class as

1.   all persons who were RightCHOICE individual or group health insurance policyholders at the time of the notice of the conversion scheme; and

2.   all insureds acquired in other WellPoint acquisitions: who owned health insurance policies (or other policies) issued by RightCHOICE (or other companies), which were either (a) converted into Unicare policies (or other WellPoint subsidiaries), or (b) discontinued by the insurer after the merger of the WellPoint and RightCHOICE (or other similar merger).

(Amended Complaint, ¶ 123).   In the complaint, Plaintiffs describe other WellPoint acquisitions affecting millions of individuals in Texas, Missouri, Georgia and other states. Their contention that this is a local dispute does not comport, say defendants, with their identification of over 10 million potential plaintiffs in paragraph 22 of the amended complaint.   Further, defendants cite a number of representations plaintiffs made to the state court before defendants removed the case.   For example, in their motion for class certification, plaintiffs indicated that Illinois law, "or similar laws of the other states in which policyholders of companies acquired by Unicare/WellPoint reside" would govern their claims  (Doc. 29, pt. 11, at 2-3).  This rather ambiguous statement was made in the context of a motion that dealt primarily with Illinois plaintiffs, like the complaint.  However, in that same motion plaintiffs go on to claim that they represent a class "essentially consisting of all policyholders of companies acquired by WellPoint, whose policies were terminated or subjected to repricing, rerating or underwriting based on their current health condition . . ." (*Id*.).  Similarly, in their memorandum in support of class certification, plaintiffs asserted that "the class of WellPoint's acquired policyholders may exceed a million individuals" and that "[t]he dispersed nationwide Class also makes joinder of all class members impracticable." (Doc. 21, pt. 8).  In making their case for numerosity, plaintiffs cited the fact that WellPoint "has 80 offices around the country which market their insurance policies, including Illinois." (*Id*.).  In their amended complaint, plaintiffs explain that

they seek to represent a class "which includes insureds of other mergers where WellPoint has executed this same type of scheme." (Amended Complaint, ¶ 125).  Plaintiffs list a number of other acquisitions in their complaint involving millions of individuals. (*Id*. at ¶ 22).   When the representations detailed above and in defendants' motion are coupled with the allegations in the amended complaint, it becomes obvious that plaintiffs are seeking to represent a nationwide class of WellPoint (and its subsidiaries) policyholders.  In attempting to invoke the local controversy and home state exceptions, they contradict the class they define in their complaint and their representations to the state court.  Given these facts, the Court is not inclined to accept plaintiffs' characterization of this action as a local dispute.  After all, plaintiffs claim this is the very same action which has proceeded for years in the state court.

Again, plaintiffs point the Court to some troubling inconsistencies in defendants' position.  According to plaintiffs, defendants have repeatedly asserted  to the state court that WellPoint's actions relating to the Illinois plaintiffs were unique to this state.  Though such representations were made, and trouble the Court, they do not dissuade it from agreeing with defendants' position.  The scope of the controversy is properly defined by plaintiffs' complaint, not defendants' denials.  Plaintiffs represent that there are approximately 25,000 RightCHOICE policyholders covered in their class in Illinois.  Even if the number were 5 times as large it would not meet the two-thirds requirement, given plaintiffs' representation that the potential class includes a million individuals nationwide.  Therefore, the Court finds that the local controversy exception and the home state exemption do not apply to this case.

Plaintiffs also claim defendants inadequately pleaded jurisdiction in their notice of removal. (Doc. 1).  In their notice of removal, defendants alleged that "Plaintiff Mike Beard, Sharon Beard,

-19-

John Beckwith and Stephen Jellen are Illinois citizens" and that "Defendant RightCHOICE Managed Care, Inc. is a Delaware Corporation with its principal place of business in St. Louis, Missouri." Despite this direct reference to the *citizenship* of the Beards, Beckwith and Jellen, plaintiffs claim defendants did not adequately plead diversity of citizenship. Since plaintiffs alleged *residence* in their complaint, and defendants cited the complaint in their jurisdictional allegation, plaintiffs claim defendants impermissibly relied on the allegation of residence to support the allegation of citizenship in the notice of removal. In support of this proposition, plaintiffs cite *Tylka v. Gerber Prods. Co.*, 211 F.3d 445 (7th Cir. 2000). There, Gerber's notice of removal alleged "residence" rather than citizenship, which was sufficient to have the case remanded to state court. *Id*. at 447. The notice of removal here is clearly distinguishable, for Defendants alleged citizenship, not residence. Plaintiffs read *Tylka* too broadly.

At least one of the major federal procedure treatises suggests that when a complaint does not reveal facts relating to the citizenship of the parties, "the case is not removable unless the defendant, in the notice of removal, can affirmatively plead, and later prove, the existence of diversity." 16 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 107.14[2][f][ii]. This approach is not inconsistent with the Seventh Circuit's position that a party asserting federal jurisdiction has the burden of establishing it, and it comports with the "short and plain statement" requirement in § 1446(a). Defendants certainly affirmatively pleaded the citizenship of plaintiffs in their notice of removal. They have attempted to prove, and in the Court's judgment have proved, in response to plaintiffs' assertions, that minimal diversity exists here. Plaintiffs have not denied that the named plaintiffs are Illinois citizens, nor have they denied that Missouri Care is a Delaware Corporation with its principal place of business in St. Louis. Though defendants have not offered evidence of

the newly named plaintiffs' citizenship, they have presented substantial evidence of that of Cima and McMahon.  (Doc. 29, at 7 n.10).  The Court recognizes that defendants did not plead the citizenship of Cima and McMahon in the notice of removal, however this does not mean the notice was defective.  Defendants have indicated their willingness to support their assertion of Illinois citizenship of the new plaintiffs.  Should plaintiffs wish to pursue this argument further, the Court will allow defendants the opportunity to conduct further discovery regarding the citizenship of these individuals.  Otherwise, their argument is without merit.

Defendants have established the other requirements for jurisdiction as well.  Clearly, plaintiffs' proposed class exceeds 100 individuals. *See* 28 U.S.C. § 1332(d)(5)(B). Defendants have also shown the $5,000,000.00 amount in controversy requirement in § (d)(2) has been met. Normally, the Court should look to the state court complaint to determine the amount in controversy. *Shaw v. Dow Brands, Inc.*, 994 F.2d 364, 366 (7th Cir. 1993).  Though plaintiffs do not make a specific monetary demand in their complaint, an analysis of the complaint suggests that the amount in controversy has been met.  In the amended complaint, plaintiffs alleged that each class member has been damaged "in the tens of thousands of dollars."  (Amended Complaint ¶ 136).  When combined with plaintiffs' assertions that they purport to represent a nationwide class of millions of policyholders, the amount in controversy exceeds CAFA's requirement.  Even if the Court accepts plaintiffs' lowball figure of 10,000 individuals, the amount is met.  In any event, when the amount in controversy cannot be determined on the face of the complaint, defendants need only show that the jurisdictional requirement has been met with a "reasonable probability." *Id.*; *Gould v. Artisoft, Inc.*, 1 F.3d 544, 547 (7th. Cir. 1993).  Defendants have come forth with significant evidence to demonstrate a reasonable probability.  In their prayer, plaintiffs demand a restitution of "all sums

-21-

obtained by Defendants to date as a result of its unlawful premium increases as a result of the new insurance policies." (Amended Complaint ¶ 203).  Plaintiffs represented to the state court that the restitution from one of the WellPoint acquisitions would be $200,000,000.00.  (Doc. 29, pt. 2, at 67-68).  When combined with the allegations of the multiple acquisitions in the complaint and the proposed class definition including individuals harmed in these other acquisitions, the Court is satisfied that defendants have met their burden.  Plaintiffs' settlement demand of a $10,000,000.00 is also sufficient to demonstrate that the amount in controversy exceeds the $5,000,000.00 requirement. *See Chase v. Shop 'N Save Warehouse Foods, Inc.*, 110 F.3d 424, 430 (7th Cir. 1997).  Defendants have shown that CAFA applies and that none of its exceptions apply.  Accordingly, plaintiffs' motion to remand is **DENIED**.

Having determined that jurisdiction is proper, the Court will now address defendants' motions to dismiss and plaintiffs' motion to strike.  Plaintiffs' main contention in their motion is that the Court must strike defendants' motions because Judge Timberlake already decided the issues in these motions in his order of May 3, 2005.  As such, they believe the doctrine of law of the case precludes this Court from addressing the merits of defendants' motions.  Judge Timberlake dismissed or struck all of the counts in plaintiffs' original complaint in a two-page order.  The order was in response to defendants' motion to dismiss upon which the court heard oral argument on March 24, 2005. (Doc. 28, ex. 2).  The first two counts of the original complaint were based upon the Illinois Health Insurance Portability and Accountability Act (HIPAA), codified at 215 ILCS 97/1, *et seq.*  On these two counts, he stated:

> Defendants argue that there is no private right of action occasioned by that Act or the insurance Code of Illinois and that there are not facts pleaded specifically regarding Right Choice Insurance Company, Inc.  The very name of the act in question and the factual situation pleaded by Plaintiff controverts Defendants' assertion.  This Court

does agree that more specific facts should be pleaded in regard to Right Choice Insurance Company as well as a more specific pleading of the merger among the insurance company entities involved as well as the legal effect of the merger. Additionally, Paragraph 21 of Plaintiffs' Complaint incorrectly states the corporate relationship between Unicare and Wellpoint.  For this reason, Counts I and II are stricken with leave to amend but solely for the specific reasons stated in this paragraph.

Timberlake also struck count III and granted leave to replead because he "believe[d] that the merger theory and corporate responsibilities could be more specifically pleaded."  In dismissing Count IV, Judge Timberlake stated his belief that "the specificity of allegedly fraudulent statements, deceptive business practices and unfair practices could be clearer."  He similarly characterized Count V as prolix and unclear.  As a result of these defaults and counsel's "specific statements in regard to common law fraud" not included in the complaint, he struck the count. For these reasons, he struck "both Counts IV and V . . . with leave to amend to allege the specificity of elements."  However, he expressed his belief "that such a cause of action as to both counts can be pleaded."  He dismissed Count VI with prejudice.

Defendants claim that Timberlake ruled in their favor and that plaintiffs' reliance on the law of the case doctrine is misplaced.  Further, they claim plaintiffs' reliance on various statements in his order is misplaced because he did not make substantive rulings in the order.  Further, defendants repeatedly stress the fact that plaintiffs' counsel allegedly made statements at oral argument indicating plaintiffs' willingness to replead if the court was inclined to grant defendants' motion to dismiss.

As a starting point for analysis, the Court recognizes that all orders entered by a state court "prior to removal shall remain in full force and effect until dissolved or modified by the district court."  28 U.S.C. § 1450.  Expressing a related policy, the doctrine of law of the case reflects the

-23-

courts' unwillingness to reopen matters that have already been decided.  *Payne v. Churchich*, 161

F.3d 1030, 1037 (7th Cir. 1998); *Int'l Union of Operating Eng'rs, Local Union 103 v. Indiana*

*Const. Corp.*, 13 F.3d 253, 256 (7th Cir. 1994).  Under this doctrine, a court should decline to revisit

matters decided in the state court when no strong reason for reevaluation is presented.  *Payne*, 161

F.3d at 1038.  Simply stated, "when a court decides upon a rule of law, that decision should continue

to govern the same issues in subsequent stages of the same case."  *Id.* at 1037 (citation omitted).

Though these considerations merit great weight, they are not dispositive.  The doctrine is strongly

supported by considerations of judicial economy and fairness, but it in the end, it is discretionary.

*See Bagola v. Kindt*, 131 F.3d 632, 637 (7th Cir. 1997).  That the law of the case is not absolute

reflects the need for a court to be able to revisit a decision of a coordinate branch when extraordinary

circumstances are presented, as when "the initial decision was clearly erroneous and would work

a manifest injustice."  *Payne*, 161 F.3d at 1038 (internal quotation marks and citation omitted).  For

similar reasons,  the doctrine is only applicable to an issue that a court has considered and decided.

*Indiana Const. Corp.*, 13 F.3d at 256; *see also* 18b CHARLES ALAN WRIGHT ET AL., FEDERAL

PRACTICE AND PROCEDURE § 4478 (2d ed. 2002).   As a natural extension of this proposition, the

doctrine of law of the case does not apply to dicta.  *Geldermann, Inc. v. Fin. Mgmt. Consultants*, 27

F.3d 307, 312 (7th Cir. 1994).

The Court is convinced that the doctrine should not apply to Judge Timberlake's order.  The

bulk of his order was directed to pleading defects resulting from plaintiffs' failure to plead with

sufficient detail and clarity.  In the first place, the order was necessarily based on the fact-pleading

regime required in Illinois courts.  As this action has been removed to federal court, federal notice

pleading governs the sufficiency of the complaint now.  *See Redfield v. Cont'l Cas. Corp.*, 818 F.2d

596, 605 (7th Cir.1987). Thus, this Court must make its own determination under the federal rules. *See id.* Further, the Court is not *required* to follow his statements that could be construed as rulings on state substantive law – i.e., his remark that "the very name of the act in question and the factual situation pleaded by Plaintiff controverts Defendants' assertion." In most situations, the court *should* defer because the state court is assuredly better able to make substantive pronouncements on state law. This is not such a case here, however, for several reasons. First, Judge Timberlake dismissed all the Counts on the basis of pleading defects. As such, there were independent grounds for the decision, arguably making his statements dicta. Without the ability to track even the basic flow of his analysis, the Court is unable to determine (especially without the benefit of a brief from plaintiffs on the issue) whether his ruling was clearly erroneous. Therefore, the Court **DENIES** plaintiffs' motion to strike. The Court will not address the merits of defendants' motions to dismiss without providing plaintiffs the opportunity to respond.

## CONCLUSION

To summarize, defendants' motion for leave to file an overlong brief is **GRANTED** (Doc. 30). Defendants' motion to strike (Doc. 21) and plaintiffs' motion to remand (Doc. 21) are **DENIED**. Plaintiffs' motion to strike (Doc. 28) is **DENIED**. The Court **RESERVES RULING** on defendants' motions to dismiss (Docs. 13, 26) pending the filing of plaintiffs' responses to these motions. Plaintiffs shall have 30 days from the date this order is entered to respond to defendants' motions.

IT IS SO ORDERED

DATED: February 3, 2006

 /s/ J. Phil Gilbert
**J. PHIL GILBERT**
**U.S. District Judge**