IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GREG CIMA, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 4:05-cv-4127-JPG |
| ) | |
| WELLPOINT HEALTH NETWORKS, INC., ) et al., ) | |
| ) | |
| Defendants. ) | |

**ORDER**

This matter is before the Court on the Motion to Strike Complaint and Exhibits Thereto in Violation of Confidentiality Agreement filed by Wellpoint Health Networks, Inc. and UniCare Illinois Services, Inc. ("Defendants") on August 14, 2006 (Doc. 92). For the reasons set forth below, the motion is **GRANTED in part and DENIED in part**.

### BACKGROUND

**Summary of Facts**

    1. In 2003, Greg Cima, et al. ("Plaintiffs") filed a complaint in state court seeking class action certification against Wellpoint Health Networks, Inc. ("Wellpoint").

    2. On June 29, 2004, the parties entered into a "Confidentiality Agreement" that covered all documents that Wellpoint provided prior to and during the parties efforts to achieve a settlement. The agreement provided that, at the close of mediation, Plaintiffs were to return all copies of documents, and to destroy all electronic documents, produced by Wellpoint for the mediation.

    3. On August 26, 2004, the state court issued a "Protective Order" that covered some of the documents produced pursuant to the Confidentiality Agreement.

    4. On May 3, 2005, the state court dismissed the complaint and gave leave to replead.

    5. On June 3, 2005, Plaintiff amended the complaint, adding new claims, new plaintiffs, and new defendants. Plaintiffs publicly filed exhibits to the complaint that were subject to the Confidentiality Agreement.

6. On June 28, 2005, Defendants removed the action to the Southern District of Illinois.

7. On August 22, 2005, Plaintiffs indicated in a letter to Defendants that certain documents submitted in the mediation were not "protectible confidential documents under existing Illinois and Seventh Circuit law." Plaintiffs also asserted that Defendants had waived any potential protection of the same documents by failing to seek a protective order after removal of the case to federal court.

8. On September 21, 2005, Defendants filed an action in state court seeking a TRO to enforce the Confidentiality Agreement of 2004.

9. On September 22, 2005, Defendants filed a motion in this court to enforce the state-issued Protective Order and to defer a ruling determining the scope and enforceability of the Confidentiality Agreement until after the state court ruled on the TRO.

10. On September 29, 2005, the state court issued a TRO enforcing the terms of the Confidentiality Agreement, finding that the "Confidentiality Agreement was not superceded by the [state-issued] Protective Order," and ordering Plaintiffs to return or destroy all documents Wellpoint had provided for the purpose of mediation.

11. On April 20, 2006, this court granted Defendants' motion to enforce the Protective Order of 2004, ruling that it "remains in force." This court also ordered the parties to confer for the purpose of determining what documents are covered by either the Protective Order or the Confidentiality Agreement.

12. On July 28, 2006, Plaintiffs submitted to this court a summary of the parties' unsuccessful attempts at reaching an agreement about the Protective Order.

13. On October 3, 2006, this court held an in-person hearing to determine the merits of motion under present consideration. More specifically, the parties presented arguments and exhibits on the question of whether the Court should strike attachments to Plaintiffs' Amended Complaint (Doc. 2) because those attachments were filed in violation of the Confidentiality Agreement.

**Summary of Arguments**

In support of the instant motion, Defendants primarily contend that the Court should strike Exhibits 8, 9, 11, 12, 13, 16, 24, 25, 26, 27, 28, 29, 43, and 48 of the first amended complaint because the 2004 Confidentiality Agreement limited Plaintiffs' use of those documents to mediation efforts.  Defendants aver that the state court's issuance of a TRO

ordering Plaintiffs to comply with the Confidentiality Agreement is a clear indicator that Plaintiffs have breached the Confidentiality Agreement and misused documents provided in the mediation. In opposition to the motion to strike, Plaintiffs aver that Defendants are seeking to seal documents that do not rate confidential treatment pursuant to Seventh Circuit law, and that Defendants waived any such objection to exhibits by not moving to strike within 20 days after the amended complaint was filed with the exhibits.

### DISCUSSION

Rule 12(f) of the Federal Rules of Civil Procedure allows a court to "order stricken from any pleading any ... redundant, immaterial, impertinent, or scandalous matter." In addition to the circumstances set forth in Rule 12(f), federal courts within the Seventh Circuit have held that courts may strike portions of a complaint that are derived from confidential information in violation of a protective order. See, i.e., Whitehead v. Gateway Chevrolet, No. 03C5684, 2004 WL 316413, at *4 (N.D. Ill. Feb. 2, 2004) ("Allegations in a complaint predicated on confidential information in violation of a protective order may be stricken under Rule 12(f)."); DEV Indus., Inc. v. Rockwell Graphic Sys., Inc., No. 91C7197, 1992 WL 100908, *2 (N.D. Ill. May 4, 1992). On the basis of the foregoing case law, the Court believes it appropriate to strike exhibits that are in violation of any protective order previously entered in this case and still in effect. Accordingly, Exhibit 48, which Defendants indicate is covered by the state-issued protective order that this court upheld in its April 20, 2006 Order (Doc. 79), is hereby **STRICKEN** from the record. By contrast, Defendants indicate that the remaining 13 exhibits attached to the amended complaint are not covered by the "in force" protective order, and pray that this court rely upon the provisions of the Confidentiality Agreement to determine whether

those exhibits should also be stricken as confidential.

      Federal courts outside the Seventh Circuit have found sufficient grounds for striking information disclosed in violation of a confidentiality agreement between the parties. See Johnson v. America Online, Inc., 280 F.Supp.2d 1018, 1027 (N.D. Cal. 2003) (granting a party's motion to strike exhibits that incorporated information the parties agreed not to produce in the litigation); cf. Toon v. Wackenhut Corrections Corp., 250 F.3d 950, 954 (5th Cir. 2001) (upholding sanctions against a party that intentionally filed a motion not under seal, thereby violating the provisions of a settlement agreement that shielded confidential information from public disclosure).

      The Seventh Circuit Court of Appeals, however, prohibits courts from relying on stipulations between the parties for determining which, if any, portions of the record will be restricted from public view. See Union Oil Co. of California v. Leavell, 220 F.3d 562, 567 (2000)(stating that a "parties' confidentiality agreement can not require a court to hide a whole case from view"); see also Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co., 178 F.3d 943, 944-945 (7th Cir.1999) ("The judge is the primary representative of the public interest in the judicial process and is duty-bound therefore to review any request to seal the record."). The Citizens First Court explained that a presumption of public access may be overcome only when a court finds that "there is good cause for sealing a part or the whole record." Id. at 945. The Court of Appeals further explained that "good cause" is satisfied if the information for which confidentiality is sought constitutes trade secrets or "some other properly demarcated category of legitimately confidential information." Id. at 946. Most importantly, the Court of Appeals clarified that a "determination of good cause cannot be elided by allowing the parties to seal

whatever they want." Id. at 945.  Although the Court of Appeals, in Citizens First, outlined the standard for preventing public disclosure of information rather than the standard for removing information already disclosed to the public, this court believes that the fact pattern there and the fact pattern here contain sufficiently analogous facts and policy considerations to justify the application of identical legal analyses.  To be sure, if the Seventh Circuit will not tolerate a sealing a portion of the record on the sole basis of party stipulation, it will certainly not tolerate taking information from the public on the sole basis of party stipulation.  As such, this court will only strike exhibits in the instant case that are confidential in nature – as opposed to confidential by party stipulation.  Consequently, Defendants' desire that the Court rely upon the Confidentiality Agreement to determine whether to strike the exhibits from the public record cannot be accommodated. The Court now turns to the question of whether the exhibits are confidential in nature – that is, whether any other basis for confidential treatment is available apart from the stipulations in the Confidentiality Agreement.

In the hearing of October 3, 2006, this court repeatedly asked Defendants to identify, which, if any, of the 13 exhibits now under review are confidential in nature and would thus be ultimately restricted from public disclosure after production in discovery.  Defendants stated that, because the exhibits were originally prepared for the purposes of the mediation and in anticipation of litigation, they would arguably be non-discoverable in their current form.[1] Defendants then clarified that their motion to strike is based upon the theory that the exhibits would not have been attached to the Amended Complaint if Plaintiffs had complied with the Confidentiality Agreement.  Defendants further clarified that, while the exhibits themselves

---

[1] The Court has drawn the inference that Defendants have invoked the work-product doctrine.

might ultimately be deemed non-discoverable on the basis that they were prepared in anticipation of litigation, the information contained in them is not necessarily confidential and would likely be suited for public view if ultimately produced in discovery.  The Court finds the latter averment dispositive.  More specifically, the Court finds that the exhibits do not contain information that is confidential in nature or otherwise non-suited for public disclosure. Plaintiffs' breach and any resulting injury is the subject of Illinois contract law; but it is not grounds for striking information from the public record in federal proceedings. See Union Oil, supra, at 567 ("If ... intransigence lead to publicity, [the injured party] may be entitled to damages for any ensuing harm, but the parties' confidentiality agreement can not require a court to hide a whole case from view.").  As such, there is no "good cause" for removing the exhibits from the public record. See Citizens First, supra, at 945.  Because the remaining 13 exhibits are not subject to an in force protective order, and because Defendants have not shown good cause for removing them from public view, the Court declines to strike Exhibits 8, 9, 11, 12, 13, 16, 24, 25, 26, 27, 28, 29 and 43. Id.

Although the Court need not address any of the remaining arguments made by either party, it is inclined to briefly address the impact of the state-issued TRO upon this court's deliberations.  Although neither party has explicitly asked this court to interfere with the state-issued TRO, Plaintiffs have mistakenly asserted that the TRO has expired or otherwise void, and Defendants have asked the Court to construe the TRO's language to fit the question of whether the exhibits should remain under seal in this federal lawsuit. While it is apparent from the TRO that Plaintiffs breached the Confidentiality Agreement by not returning or destroying the documents, the TRO directs that Plaintiffs comply with the agreement and perform their

obligations thereto.  As such, the TRO constituted an equitable remedy for that breach, thus no issue related to the breach is properly before this court.  Put another way, the breach has been adjudicated in the proper state forum and, to this day, remains an issue subject to state jurisdiction and, consequently, state law.  Similarly, because the state-issued TRO does not purport to establish whether the exhibits under review here contain legitimately confidential information, or whether that information is actually suited for public disclosure pursuant to federal law, this court sees no reason to narrow, enlarge, or otherwise supplant the finite pronouncements within it.  Simply put, the TRO is entitled to full faith and credit here, and has, nonetheless, no bearing on the relief Defendants seek in their instant motion to strike.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Strike Complaint and Exhibits Thereto (Doc. 92) is **GRANTED in part and DENIED in part**.  More specifically, the motion is **GRANTED** with respect to Exhibit 48, which is hereby **STRICKEN** from the public record; and the motion is **DENIED** with respect to the Amended Complaint (Doc. 2) and Exhibits 8, 9, 11, 12, 13, 16, 24, 25, 26, 27, 28, 29, and 43 thereto, each of which the Clerk of the Court is hereby **DIRECTED** to unseal.

**DATED: January 5, 2007**

                                               *s/ Donald G. Wilkerson*
                                               **DONALD G. WILKERSON**
                                               **United States Magistrate Judge**