UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

GREG CIMA, et al., individually and on
behalf of all others similarly situated,

Plaintiffs,

v.

WELLPOINT HEALTH NETWORKS,
INC., et al.,

Defendants.

Case No. 05-cv-4127-JPG

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

This matter comes before the Court on the motion for class certification brought by

plaintiffs Greg Cima, Diana Peek, Linda McMahon, Mike Beard, Sharon Beard,

John Beckwith, Jr, and Stephen Jellen (Doc. 152).[1]  For the following reasons, the motion

is **DENIED**.

## I. Introduction

As the Court has discussed in previous orders outlining the nature of the claims and the

procedural history of this case, *see, e.g., Cima v. Wellpoint Healthcare Networks, Inc.*,

No. 05-CV-4127-JPG, 2006 WL 1914107 (S.D. Ill. July 11, 2006), the plaintiffs are former

holders of health insurance policies issued through defendant RightCHOICE Insurance Company

and/or its parent corporation defendant RightCHOICE Managed Care, Inc. (hereinafter,

collectively, "RightCHOICE").  The plaintiffs allege that in 2001 defendant WellPoint Health

---

1.    At a status conference in this matter conducted on January 17, 2008, the plaintiffs' counsel
advised the Court that Diana Peek has died.  A motion to substitute Mrs. Peek's daughters as
plaintiffs in her stead is pending before United States Magistrate Judge Donald G. Wilkerson.

Networks, Inc., ("WellPoint") acquired RightCHOICE through a merger from which RightCHOICE emerged as a wholly-owned subsidiary of WellPoint. The plaintiffs contend that, although at the time WellPoint acquired RightCHOICE WellPoint represented in a "Form A" filing with the Illinois Department of Insurance ("IDOI") that it had no plans to make material changes in RightCHOICE's business, in fact WellPoint intended to cause, and did cause, RightCHOICE to withdraw from the Illinois insurance market. As a result of the market withdrawal, the plaintiffs allege, RightCHOICE insureds were forced by WellPoint to convert to more expensive policies issued through defendants Unicare National Services, Inc., Unicare Illinois Services, Inc., and Unicare Health Insurance Company of the Midwest, (hereinafter, collectively, "Unicare") which are Illinois subsidiaries of WellPoint. RightCHOICE insureds who could not afford to convert to Unicare policies were compelled to seek coverage through other carriers or else do without health insurance.

The operative complaint in this case alleges that the market withdrawal and conversion scheme executed by WellPoint with respect to RightCHOICE policyholders constitutes a breach of contract in that the withdrawal and conversion violated the renewability provisions of RightCHOICE policies, which incorporated provisions of the Illinois Health Insurance Portability and Accountability Act ("HIPAA"), 215 ILCS 97/1-97/99. The complaint alleges also that the withdrawal and conversion scheme constitutes an unfair trade practice under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1-505/12. The plaintiffs have moved for certification of a class of Illinois RightCHOICE policyholders, defined as "all persons who were RightCHOICE individual or group health insurance policyholders at the time of the notice of the conversion scheme who owned health insurance

policies issued by RightCHOICE, which were either (a) converted into Unicare policies, or (b) discontinued by the insurer after the merger of WellPoint and RightCHOICE." Doc. 152 at 14. The motion for class certification has been fully briefed and is ripe for decision. Having reviewed carefully the submissions of the parties, the Court rules as follows.

## II. <u>Discussion</u>

### A.     Legal Standard

A party seeking certification of a class under Rule 23 of the Federal Rules of Civil Procedure must demonstrate that the proposed class meets all four requirements of Rule 23(a): (1) the class is so numerous that joinder of the class members is impracticable ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the class representatives are typical of the claims or defenses of the class as a whole ("typicality"); and (4) the representatives will fairly and adequately protect the class interests ("adequacy"). *See* Fed. R. Civ. P. 23(a)(1)-(4); *Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978, 985 (7th Cir. 2002). An additional requirement courts have implied in Rule 23(a) is that a proposed class must be reasonably definite and ascertainable. *See* 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1760 (1998 & Supp. 2007) (collecting cases). If a proposed class meets the prerequisites of Rule 23(a), it must then be shown that the class satisfies at least one of the three requirements of Rule 23(b) as well. *See Hispanics United of DuPage County v. Village of Addison, Ill.*, 160 F.R.D. 681, 686 (N.D. Ill. 1995); *Hardin v. Harshbarger*, 814 F. Supp. 703, 706 (N.D. Ill. 1993). "A party seeking class certification bears the burden of proving that each of the requirements under Rule 23 has been met, and a failure by the movant to satisfy any one of these prerequisite

3

elements precludes certification." *Westefer v. Snyder*, Civil Nos. 00-162-GPM, 00-708-GPM, 2006 WL 2639972, at *2 (S.D. Ill. Sept. 12, 2006) (citations omitted).

A court has broad discretion to determine whether a proposed class meets the Rule 23 certification requirements. *See Westefer*, 2006 WL 2639972, at *2. In making this determination, Rule 23 should be construed liberally to support its policy of favoring the maintenance of class actions. *See King v. Kansas City S. Indus., Inc.*, 519 F.2d 20, 25-26 (7th Cir. 1975). A court cannot consider the merits of the claims for relief asserted by the members of a proposed class, *see Rodriguez v. Ford Motor Credit Co.*, No. 01 C 8526, 2002 WL 655679, at *1 (N.D. Ill. Apr. 19, 2002) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974)), although in evaluating class certification a court "must take into account 'the substantive elements of plaintiffs' cause of action and inquire into the proof necessary for the various elements' and envision 'the form that trial on these issues would take.'" *Spicer v. Chicago Bd. Options Exch., Inc.*, No. 88 C 2139, 1990 WL 16983, at *5 (N.D. Ill. Jan. 31, 1990) (quoting *Simer v. Rios*, 661 F.2d 655, 672 (7th Cir. 1981)). *See also Palmer v. Combined Ins. Co. of Am.*, 217 F.R.D. 430, 437 (N.D. Ill. 2003) (quoting *Dhamer v. Bristol-Myers Squibb Co.*, 183 F.R.D. 520, 530 (N.D. Ill. 1998)) (in evaluating a request for class certification, a court "cannot consider the merits of [the plaintiffs'] claim and [is permitted to] consider the evidence presented by both parties only to the extent needed to 'understand the claims, defenses, relevant facts and applicable substantive law.'"); *Elliott v. ITT Corp.*, 150 F.R.D. 569, 572 (N.D. Ill. 1992) (on a motion for class certification, a court may not consider arguments on the merits of the case, but it looks to the substantive elements of the class claims and the evidence necessary to prove those elements so as to envision the form which trial on those issues will

take).  Even where the elements of class certification are not in dispute, a court has a duty to evaluate independently the proposed class to ensure its compliance with the requirements of Rule 23.  *See Davis v. Hutchins*, 321 F.3d 641, 648-49 (7th Cir. 2003); *Boeckman v. A.G. Edwards, Inc.*, No. Civ.05 658 GPM, 2006 WL 4043782, at *1 (S.D. Ill. Oct. 13, 2006).

**B.      Rule 23(a) Requirements**

As an initial matter, the Court addresses the defendants' challenge to the definition of the proposed class, which the Court takes to be a challenge to the ascertainability of the class.  As noted, implicit in the prerequisites for class certification set out in Rule 23(a) is the requirement that a class be ascertainable.  "It is absolutely necessary that for a class action to be certified, the class must be susceptible to a precise definition.  Therefore, the class definition must be sufficiently definite so that it is administratively feasible for the Court to determine whether a particular individual is a member of the proposed class."  *Clay v. American Tobacco Co.*, 188 F.R.D. 483, 490 (S.D. Ill. 1999).  *See also Harris v. General Dev. Corp.*, 127 F.R.D. 655, 658 (N.D. Ill. 1989).  "Furthermore, for a class to be sufficiently defined, the identity of the class members must be ascertainable by reference to objective criteria."  *Clay*, 188 F.R.D. at 490 (citing *Gomez v. Illinois State Bd. of Educ.*, 117 F.R.D. 394, 397 (N.D. Ill. 1987)).  "[W]hether the description of a class is sufficiently definite to permit ascertainment of the class members must be determined on a case-by-case basis."  *Id*. (citing *Alliance to End Repression v. Rochford*, 565 F.2d 975, 977 (7th Cir. 1977)).  The gist of the defendants' argument regarding the propriety of the proposed class definition seems to be that membership in the class is contingent upon a finding by the Court that WellPoint engaged in an unlawful scheme to withdraw RightCHOICE from the Illinois insurance market and to force RightCHOICE policyholders to convert to

Unicare policies. The Court disagrees. The proposed class consists essentially of persons who were RightCHOICE policyholders at the time notice was given of the alleged conversion scheme. Accordingly, the members of the class are identifiable by reference to objective criteria, so that the requirement of an ascertainable class is satisfied.[2]

Turning next to the issue of numerosity, Rule 23(a) requires that the class be "so numerous that joinder of all members is impracticable[.]" Fed. R. Civ. P. 23(a)(1). "A class of more than 40 individuals raises a presumption that joinder is impracticable." *Carrier v. JPB Enters., Inc.*, 206 F.R.D. 332, 334 (D. Me. 2002). *See also Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986) ("[W]hile there is no fixed numerosity rule, . . . generally less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors."). Correspondingly, courts have found the numerosity element satisfied where the putative class would number in the range of as few as ten to forty class members. *See, e.g., Swanson v. American Consumer Indus., Inc.*, 415 F.2d 1326, 1333 & n.9 (7th Cir. 1969) (forty class members satisfied numerosity); *Hendricks-Robinson v. Excel Corp.*, 164 F.R.D. 667, 671 (C.D. Ill. 1996) (thirty-eight class members satisfied numerosity); *Riordan v. Smith Barney*, 113 F.R.D. 60, 62 (N.D. Ill. 1986) (certifying a class of twenty-nine members, and noting that courts have certified classes of as few as ten members). Further, a

---

2.   To the extent the defendants' objection to the proposed class definition is premised on the so-called "one way intervention" doctrine, the Court likewise finds the objection without merit. The one way intervention doctrine holds generally that class certification must occur before any determination is made with respect to the merits of the class claims. *See Oglesby v. Rotche*, No. 93 C 4183, 1994 WL 142867, at *1 (N.D. Ill. Apr. 18, 1994). The purpose of the doctrine is to avoid the inequities to defendants that would arise if class members could make decisions about whether or not to opt-out of a class on the basis of pre-certification rulings on the merits. *See Williams v. Lane*, 129 F.R.D. 636, 639-40 (N.D. Ill. 1990). Obviously, the one way intervention doctrine has no bearing on this case.

court is entitled to make "common sense assumptions" in resolving the question of numerosity. *Arenson v. Whitehall Convalescent & Nursing Home, Inc.*, 164 F.R.D. 659, 662 (N.D. Ill. 1996). In this case the plaintiffs have adduced evidence that the proposed class includes at the very least thousands of members, so that the requirement of numerosity is satisfied. *See Hochschuler v. G.D. Searle & Co.*, 82 F.R.D. 339, 343 (N.D. Ill. 1978) (noting that a class exceeding one thousand members is plainly sufficient to satisfy numerosity).

With respect to commonality, under Rule 23(a), "questions of law or fact common to the class" must exist before a class may be certified. Fed. R. Civ. P. 23(a)(2). "[T]he commonality requirement has been characterized as a . . . low hurdle . . . [that is] easily surmounted," *Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 57 (N.D. Ill. 1996) (quoting *Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 185 (N.D. Ill. 1992)), because, to satisfy commonality, a plaintiff need only show that there is "at least one question of law or fact common to the class." *Arenson*, 164 F.R.D. at 663. *See also Blihovde v. St. Croix County, Wis.*, 219 F.R.D. 607, 616 (W.D. Wis. 2003) (calling commonality "a permissive standard" because "a single common issue is sufficient to satisfy this requirement."). Generally commonality is satisfied as long as there is "[a] common nucleus of operative fact" as to the class members' claims. *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). *See also In re General Motors Corp. Dex-Cool Prods. Liab. Litig.*, 241 F.R.D. 305, 311-12 (S.D. Ill. 2007); *Allen v. City of Chicago*, 828 F. Supp. 543, 551 (N.D. Ill. 1993). In this instance the plaintiffs have identified several issues of law and fact common to the claims of the proposed class, including: "WellPoint's and RightCHOICE's Form A merger representations to the IDOI, that WellPoint had no plan to make material changes to RightCHOICE's business, applied to the entire class of RightCHOICE insureds"; "The market

withdrawal, RightCHOICE's canceling policies, and WellPoint/Unicare's marketing and attempt

to convert the RightCHOICE insureds to Unicare"; "WellPoint's plan to re-rate and convert the

RightCHOICE insureds to Unicare applied to the entire class of RightCHOICE insureds"; "The

execution of the WellPoint plan to convert RightCHOICE insureds to Unicare was singular,

uniform, and comprehensive to the entire Illinois RightCHOICE insureds"; and "Whether the

market withdrawal violated the insureds rights under their policies and HIPAA provisions § 215

ILCS 97/50 for individuals and § 215 ILCS 97/30 for group policy insureds."  Doc. 152 at 17.

Accordingly, the requirement of commonality is satisfied.[3]

Concerning typicality, Rule 23(a) requires a court to determine whether the "claims or

defenses of the representative parties are typical of the claims or defenses of the class[.]"

Fed. R. Civ. P. 23(a)(3).  In general, the claims of a named class representative are typical if they

arise "from the same event or practice or course of conduct that gives rise to the claims of other

class members and his or her claims are based on the same legal theory."  *Rosario*, 963 F.2d

at 1018 (quoting *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)).

*See also Clay*, 188 F.R.D. at 491 ("The Court should concentrate on the defendants' alleged

conduct and the plaintiffs' legal theory to satisfy [typicality].").  "Typical does not mean

identical, and the typicality requirement is liberally construed . . . . Factual differences will not

render a claim atypical if the claim arises from the same event or practice or course of

conduct that gives rise to the claims of the class members, and if it is based on the same legal

theory."  *Westefer*, 2006 WL 2639972, at *5.  In this instance the named plaintiffs' claims are

_____

3.    Naturally, the fact that the Court has found that this case presents some common questions
does not mean that those questions predominate over individual issues as is required for class
certification under Rule 23(b)(3), an issue that will be discussed in more detail presently.

premised on the same conduct and the same legal theory as the rest of the proposed class because all such claims posit an unlawful scheme by WellPoint to withdraw RightCHOICE from the Illinois insurance market and convert RightCHOICE policyholders to Unicare. Therefore, "the named plaintiff[s'] interests are aligned with the proposed class, and thus in pursuing their own claims, the named plaintiffs will also advance the interest of the class." *Guillory v. American Tobacco Co.*, No. 97 C 8641, 2001 WL 290603, at *4 (N.D. Ill. Mar. 20, 2001). *See also Spencer v. Central States, S.E. & S.W. Areas Pension Fund*, 778 F. Supp. 985, 989 (N.D. Ill. 1991) (explaining that "[t]ypicality . . . is intended as a safeguard to insure that the named plaintiff[s'] interests are substantially coextensive with the interests of the class."). The requirement of typicality is satisfied in this case.

The final Rule 23(a) requirement for class certification is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). For purposes of Rule 23(a)'s adequacy requirement, a plaintiff is adequate and thus qualified to represent a class "if his 'interest in proving his claim[s] will lead him to prove the claims of the remainder of his class.'" *Haroco, Inc. v. American Nat'l Bank & Trust Co. of Chicago*, 121 F.R.D. 664, 670 (N.D. Ill. 1988) (quoting *Hochschuler*, 82 F.R.D. at 348).[4] To meet the

---

4.    The requirement of adequacy under Rule 23(a)(4) frequently is set out as a two-part inquiry: (1) whether the named plaintiff's representation in protecting the distinct interests of class members is adequate and (2) whether the named plaintiff's counsel is adequate. *See, e.g., Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993); *Wallace v. Chicago Hous. Auth*., 224 F.R.D. 420, 429 (N.D. Ill. 2004). However, in view of amendments to Rule 23 in 2003, it is clear that the inquiry into the adequacy of counsel is governed not by Rule 23(a) but by Rule 23(g). The commentary to Rule 23 explains that, in light of the 2003 amendments, "Rule 23(a)(4) will continue to call for scrutiny of the proposed class representative, while [Rule 23(g)] will guide the court in assessing proposed class counsel as part of the certification decision." Fed. R. Civ. P. 23 advisory committee's note. *See also Westefer*, 2006 WL 2639972, at *6 n.2, *11. Because as will be discussed infra this case does satisfy the

requirement of adequacy, a class representative must not have "antagonistic or conflicting claims" with the members of the purported class. *Gammon v. GC Servs. Ltd. P'ship*, 162 F.R.D. 313, 317 (N.D. Ill. 1995). *See also Ridings v. Canadian Imperial Bank of Commerce Trust Co. (Bahamas)*, 94 F.R.D. 147, 154 (N.D. Ill. 1982) (adequacy is satisfied "[a]s long as the Court is . . . assured that the named parties are qualified and capable of fully pursuing the common goals of the class without collusion or conflicts of interest."). "Absent any conflict between the interests of the representative and [other class members], and absent any indication that the representative will not aggressively conduct the litigation, fair and adequate protection of the class may be assumed." *In re General Motors Corp. Dex-Cool Prods. Liab. Litig*., 241 F.R.D. at 313 (quoting *Guarantee Ins. Agency Co. v. Mid-Continental Realty Corp*., 57 F.R.D. 555, 565-66 (N.D. Ill. 1972)). In this case the defendants have not produced any evidence of inconsistencies between the interests of the named plaintiffs and the members of the proposed class such as to establish the inadequacy of the named plaintiffs as class representatives. Thus, the Court concludes that all of the requirements of Rule 23(a) are satisfied in this case.

### C. Rule 23(b) Requirements

Although the Court concludes that the requirements of Rule 23(a) are satisfied in this case, the plaintiffs' request for class certification founders on the requirements of Rule 23(b). The plaintiffs have requested class certification under both Rule 23(b)(2) and (b)(3). The Court considers the propriety of class certification under each of these subsections of Rule 23(b) in turn.

---

requirements for class certification under Rule 23(b)(2) or (b)(3) the Court does not reach the issue of adequacy of the proposed class counsel under Rule 23(g).

## 1.    Rule 23(b)(2)

Rule 23(b) authorizes certification of a class action if the prerequisites of Rule 23(a) are satisfied, and in addition, "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]"  Fed. R. Civ. P. 23(b)(2).  As the language of the rule makes clear, in order for a class to be certified under Rule 23(b)(2), the relief sought on behalf of the class must be primarily equitable in nature.  The commentary to Rule 23 explains, "[t]his subdivision is intended to reach situations where a party has taken action or refused to take action with respect to a class, and final relief of an injunctive nature or of a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate . . . .  The subdivision does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages."  Fed. R. Civ. P. 23 advisory committee's note.  *See also Zanni v. Lippold*, 119 F.R.D. 32, 35 (C.D. Ill. 1988).

The distinction between class certification under Rule 23(b)(2) and Rule 23(b)(3) has important implications for the due process rights of class members.  With respect to Rule 23(b)(3) class actions, "each class member in actions for money damages is entitled as a matter of due process to personal notice and an opportunity to opt out of the class action.  Accordingly, Rule 23(c)(2) guarantees those rights for each member of a class certified under Rule 23(b)(3)."  *Lemon v. International Union of Operating Eng'rs, Local No. 139, AFL-CIO*, 216 F.3d 577, 580 (7th Cir. 2000) (citation omitted).  "However, the Federal Rules of Civil Procedure do not provide comparable procedural guarantees of those rights for a class certified under . . . [Rule 23](b)(2), and as a result, . . . certification [under that subsection] does not

ensure personal notice or opportunity to opt out even if some or all the plaintiffs pray for monetary damages." *Id*. *See also Jefferson v. Ingersoll Int'l Inc.*, 195 F.3d 894, 896 (7th Cir. 1999) ("If the action proceeds under Rule 23(b)(3), then each member of the class must receive notice and an opportunity to opt out and litigate (or not) on his own behalf . . . . If it proceeds under Rule 23(b)(2), by contrast, then no notice will be given, and no one will be allowed to opt out.").

In *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402 (5th Cir. 1998), which has been adopted in this Circuit, *see Lemon*, 216 F.3d at 580; *Jefferson*, 195 F.3d at 898, the court explained the rationale for denying notice and an opportunity to opt out in Rule 23(b)(2) class actions. In class actions where the relief sought is chiefly monetary, resolution of the class claims depends "on the intangible, subjective differences of each class member's circumstances," and "entail[s] complex individualized determinations." *Allison*, 151 F.3d at 415. Put another way, "a class seeking substantial monetary remedies will more likely consist of members with divergent interests," requiring class members to be afforded an opportunity to protect those interests through the devices of notice and opt-out. *Id*. at 413. By contrast, in Rule 23(b)(2) classes, there is a "presumption[ ] with respect to the cohesiveness and homogeneity of interests among members of" the class, rendering the procedural safeguards applicable to Rule 23(b)(3) classes unnecessary. *Id*. at 412. Constitutional guarantees for absent members of a mandatory class are preserved through fulfillment of the adequacy of representation requirement of Rule 23(a) and the homogeneity requirement of Rule 23(b)(2) associated with the necessary unitary adjudication of all claims. *See id*. at 412-15. *See also In re Joint E. & S. Dist. Asbestos Litig.*, 78 F.3d 764, 777-78 (2d Cir. 1996) (denial of a motion to opt out of a class settlement in

bankruptcy court asbestos litigation, which was filed by claimants who had already brought or intended to bring claims for asbestos-related injuries in the District of Columbia, was not an abuse of discretion, when the claimants did not suggest that the class representatives or their counsel lacked the requisite qualifications to represent them or had any antagonistic interests; the claimants had received fair and adequate representation of their rights, and the delicate balancing of interests reached in the settlement agreement would be upset if claimants were now allowed to opt out).

The United States Court of Appeals for the Seventh Circuit recognizes that the mere fact that a component of the relief sought in a class action is money damages does not automatically preclude class certification under Rule 23(b)(2). "When the main relief sought is injunctive or declaratory, and the damages are only 'incidental,' the suit can be maintained under Rule 23(b)(2)." *In re Allstate Ins. Co.*, 400 F.3d 505, 507 (7th Cir. 2005). However, "[t]he operational meaning of 'incidental' damages in this setting is that the computation of damages is mechanical, 'without the need for individual calculation,' so that a separate damages suit by individual class members would be a waste of resources." *Id.* (quoting *Manual for Complex Litigation (Fourth)* § 21.221 (2004)). *See also Berger v. Xerox Corp. Ret. Income Guar. Plan*, 338 F.3d 755, 763-64 (7th Cir. 2003). This case is not one in which damages will flow mechanically to class members without the necessity of individualized calculations, nor is the monetary relief sought merely incidental to a request for equitable relief; in fact, money damages are the primary relief sought by the plaintiffs and the members of the proposed class. Accordingly, the members of the proposed class must be afforded the constitutional protections of notice and a right to opt out, rendering class certification under Rule 23(b)(2) inappropriate in

this case.  *See In re General Motors Corp. Dex-Cool Prods. Liab. Litig.*, 241 F.R.D. at 327 n.9

("The constitutional rationale for dispensing with the requirements of notice and an opportunity

to opt out in Rule 23(b)(2) class actions is that, where class members seek relief that is primarily

equitable rather than legal, e.g., money damages, the constitutional protections for the rights of

unnamed class members furnished by notice and opt-out are not required . . . . In this case,

although Plaintiffs are not requesting damages at this stage of the proceedings, it is obvious that

the primary relief sought is monetary, not equitable, making Rule 23(b)(2) certification

inappropriate.").  *See also Bolin v. Sears, Roebuck & Co.*, 231 F.3d 970, 975-76 (5th Cir. 2000)

(citing *Allison*, 151 F.3d at 415) (expressing "concern" that "plaintiffs may attempt to shoehorn

damage actions into the Rule 23(b)(2) framework, depriving class members of notice and opt-out

protections.").

### 2.      Rule 23(b)(3) Requirements

As a final matter, the Court addresses the propriety of class certification under

Rule 23(b)(3).  That portion of the rule permits a case to proceed as a class action if the

requirements of Rule 23(a) are satisfied and "the court finds that the questions of law or fact

common to class members predominate over any questions affecting only individual members,

and that a class action is superior to other available methods for fairly and efficiently adjudicating

the controversy."  Fed. R. Civ. P. 23(b)(3).  "This rule requires two findings:  predominance of

common questions over individual ones and superiority of the class action mechanism."

*Murry v. America's Mortgage Banc, Inc.*, No. 03 C 5811, 03 C 6186, 2005 WL 1323364, at *9

(N.D. Ill. May 5, 2005).  In evaluating the requirement of superiority, a court must consider:

"(A) the class members' interests in individually controlling the prosecution or defense of

separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3). *See also Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676 (7th Cir. 2001). The Court finds that this action fails to satisfy either the requirement of predominance or superiority.

As an initial matter, the Court notes that this case involves thousands of separate insurance policies issued over a period of ten years, each containing, no doubt, differing coverages, policy terms, and so forth. The Court finds it implausible to suppose that no individualized inquiries into the terms of particular contracts and the circumstances of specific class members will be entailed in adjudicating the claims of the proposed class both for breach of contract and unfair trade practices. The necessity for such individualized inquiries defeats predominance as well as the manageability component of superiority under Rule 23(b)(3). *See Isaacs v. Sprint Corp.*, 261 F.3d 679, 682 (7th Cir. 2001) (vacating a grant of class certification in a case involving thousands or tens of thousands of separate instruments conveying land); *Frahm v. Equitable Life Assurance Soc'y of U.S.*, 137 F.3d 955, 956-57 (7th Cir. 1998) (holding that class certification was inappropriate in a case involving numerous separate oral and written representations made to class members regarding medical coverage that were alleged to create a contract); *Stock v. Integrated Health Plan, Inc.*, No. 3:06-cv-00215-DRH, 2007 WL 2565981, at **1-2 (S.D. Ill. Sept. 4, 2007) (in a putative class action by medical providers against a participating provider organization for alleged breach of contract, holding that variations in specific contracts and the need to conduct individualized

inquiries as to the right of class members to relief defeated predominance and manageability);

*Liberty Mut. Ins. Co. v. Tribco Constr. Co.*, 185 F.R.D. 533, 538-39 (N.D. Ill. 1999) (in a putative class action by an employer against a workers' compensation carrier, holding that predominance was not satisfied where the court would be required to conduct individualized inquiries as to representations by the carrier's agents alleged to constitute a contract and as to the carrier's claims-processing practices). *See also Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 340 (4th Cir. 1998) (in a class action by franchisees against a franchisor alleging, inter alia, breach of franchise agreements, stating, "plaintiffs simply cannot advance a single collective breach of contract action on the basis of multiple different contracts.");

*Sprague v. General Motors Corp.*, 133 F.3d 388, 397-98 (6th Cir. 1998) (holding that class certification was inappropriate as to the claims of a class of early retirees for lifetime health benefits based on theories of bilateral contract and estoppel where each retiree's alleged bilateral contract depended on which documents the retiree might have signed and any representations an employer might have made to that retiree, and, given the lack of uniformity of the employer's statements, the retirees' subjective understandings and reliance on them would have varied);

*Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 821-24 (Ill. 2005) (in a class action by insureds against an automobile insurer to recover for breach of contract and for consumer fraud in violation of the ICFA based on the insurer's failure to pay for original equipment manufacturer (OEM) parts for repairs of the insureds' vehicles, holding that the breach of contract claims were unsuitable for class certification in view of the number of contracts implicated by the class claims and variations in policy language regarding use of non-OEM parts by the insurer).

16

Additionally, this case presents a somewhat novel issue of choice of law, given that, as the defendants point out, many, if not most, of the group insurance plans at issue in the proposed class are governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461. ERISA broadly preempts state-law claims related to employee welfare benefit plans, stating, in pertinent part, "the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan[.]" 29 U.S.C. § 1144(a). *See also Egelhoff v. Breiner*, 532 U.S. 141, 146 (2001). The Seventh Circuit Court of Appeals has instructed that an employee benefit plan is within the scope of ERISA the plan if it satisfies the following elements: (1) it is a plan, fund, or program; (2) established or maintained; (3) by an employer or by an employee organization, or by both; (4) for the purpose of providing medical, surgical, hospital care, sickness, accident, disability, death, unemployment, or vacation benefits, apprenticeship or other training programs, day care centers, scholarship funds, prepaid legal services, or severance benefits; (5) to participants or their beneficiaries. *See Ed Miniat, Inc. v. Globe Life Ins. Group, Inc.*, 805 F.2d 732, 738 (7th Cir. 1986). In general, consistent with the broad remedial purpose of ERISA to ensure protection for participants in employee benefit plans, *see Lively v. Dynegy, Inc.*, No. 05-CV-00063-MJR, 2007 WL 685861, at *13 (S.D. Ill. Mar. 2, 2007), courts in this Circuit construe the definition of an employee benefit plan under ERISA liberally. *See, e.g., Dwyer v. Unum Life Ins. Co. of Am.*, No. 03 C 1118, 2003 WL 22844234, at *2 (N.D. Ill. Dec. 1, 2003); *Goodson v. American United Life Ins. Co.*, No. IP:02-0197-C-T/K, 2002 WL 1354715, at *3 (S.D. Ind. May 2, 2002). In evaluating whether a plan is within the scope of ERISA, a court must examine, in addition to the elements outlined in *Ed Miniat*, regulations

promulgated by the Department of Labor ("DOL") that state that an employer will not be deemed to have established or maintained an ERISA plan if all of the following requirements are met: (1) the employer did not make any contributions to the plan; (2) the employer left participation in the program completely to the discretion of employees; (3) without endorsing the program, the employer limited its functions with respect to the program to permitting an insurer to publicize the program to employees, collecting premiums through payroll deductions or dues checkoffs and remitting them to the insurer; and (4) the employer received no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs. *See* 29 C.F.R. § 2510.3-1(j); *Postma v. Paul Revere Life Ins. Co.*, 223 F.3d 533, 537 (7th Cir. 2000); *Memorial Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 241 n.6 (5th Cir. 1990). The DOL "safe harbor" regulation notwithstanding, only a "minimal level of employer involvement is necessary to trigger ERISA," *Russo v. B & B Catering, Inc.*, 209 F. Supp. 2d 857, 860 (N.D. Ill. 2002), and the Court is quite certain that a large number of group insurance plans involved in this case are ERISA plans as to which state-law claims are preempted. The choice of law question presented by this case – whether state-law claims with respect to the group insurance plans in the class are preempted by federal law – is somewhat different than the kind of choice of law problem that generally defeats predominance and manageability in the class-action context, namely, the difficulty of applying the laws of multiple states to a class. *See, e.g., Isaacs*, 261 F.3d at 682. Nevertheless, given that the claims of the proposed class in this case likely are honeycombed with issues of ERISA preemption, the Court finds that predominance and manageability are not satisfied.

Finally, the Court is not persuaded that a class action is a superior means of resolving the claims of the proposed class. The complaint in this case alleges that the named plaintiffs and the members of the proposed class each have suffered damages in the amount of "tens of thousands of dollars," Complaint ¶ 136, and in fact, as the defendants point out, at least one named plaintiff, Mrs. Peek, avers damages in the amount of several hundred thousand dollars. As noted, in ascertaining whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy," a court must evaluate "the class members' interests in individually controlling the prosecution or defense of separate actions[.]"

Fed. R. Civ. P. 23(b)(3)(A). In *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997), the Court explained that "[t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." *Id*. at 617. Correspondingly, in a case involving, as here, substantial individual claims worth tens of thousands of dollars or more, class members obviously have an important interest in bringing individual actions. *See Szabo*, 249 F.3d at 678 (holding that "it is unnecessary to certify a nationwide class. Each [class member] has a substantial claim, of the sort that could be, and often is, pursued independently."). *See also Zinser v. Accufix Research Inst., Inc*., 253 F.3d 1180, 1190-91 (9th Cir. 2001) (a pacemaker implantee failed to demonstrate that a class action was a superior method of resolving negligence, products liability, and medical monitoring claims against the manufacturer of a pacemaker lead when allegations of the minimum amount in controversy for each putative class member exceeded $50,000); *Georgine v. Amchem Prods.,*

*Inc.*, 83 F.3d 610, 633 (3d Cir. 1996) (quoting Fed. R. Civ. P. 23 advisory committee's note) (a

class action was not a superior means for resolving personal injury claims against manufacturers

of asbestos-containing products where "the amounts at stake for individuals" were not "so small

that separate suits would be impracticable" and instead "[p]laintiffs have a substantial stake in

making individual decisions on whether and when to settle."); *Benner v. Becton Dickinson &*

*Co.*, 214 F.R.D. 157, 173 (S.D.N.Y. 2003) (the superiority requirement for class certification was

not satisfied with respect to issues of design defect and negligent design in a products liability

suit; each class member's alleged damages were in excess of $75,000, and thus the value of the

class members' claims were not so nominal that a class action would be the most favorable way

to adjudicate them).  The Court concludes that the plaintiffs have failed to show that class

certification is appropriate under Rule 23(b)(3).[5]

---

5.      As a last matter, the Court notes that the plaintiffs' motion for class certification is styled a request for "interim" class certification, and the plaintiffs' counsel have expressed a desire to move at some future date for certification of a larger, multistate class.  Although counsel are certainly welcome to make such a motion, the Court warns them that the same issues precluding certification of an Illinois-only class discussed in this Order likely will arise also in the context of a multistate class.  Moreover, the Seventh Circuit Court of Appeals has warned repeatedly in recent years against the certification of unwieldy multistate classes, holding that the difficulties inherent in applying the laws of numerous states to the class claims defeat both predominance and manageability.  *See, e.g., In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1018-21 (7th Cir. 2002) (decertifying a nationwide class action alleging, inter alia, claims for breach of express and implied warranties:  "Because these claims must be adjudicated under the law of so many jurisdictions, a single nationwide class is not manageable."); *Isaacs*, 261 F.3d at 681-82 (class certification was inappropriate in a suit by owners of land adjacent to railroad rights-of-way against railroad companies and a long-distance telephone company that bought sub-easements from the railroads alleging that the rights-of-way belonged to the landowners; the suit involved "different conveyances by and to different parties made at different times over a period of more than a century . . . in 48 different states [and] the District of Columbia . . . which have different laws regarding the scope of easements," so that individualized issues of law and fact predominated over any common issues); *Szabo*, 249 F.3d at 677-78 (on interlocutory appeal, vacating and remanding for further consideration a district court's decision to grant class certification:  "A nationwide class in what is fundamentally a breach-of-warranty action, coupled

### III. Conclusion

For all of the foregoing reasons, the plaintiffs' motion for class certification (Doc. 152)

is **DENIED**.

**IT IS SO ORDERED.**
**DATED: March 18, 2008**

**s/ J. Phil Gilbert**
**J. PHIL GILBERT**
**DISTRICT JUDGE**

---

with a claim of fraud, poses serious problems about choice of law, the manageability of the suit, and thus the propriety of class certification."); *In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1300 (7th Cir. 1995) (decertifying a nationwide class action asserting claims for negligence because although the law of negligence among the various states in the class may have differed "only in nuance . . . . nuance can be important," and the problem could not be overcome by giving the jury an "Esperanto" instruction presenting an ideal law of negligence that was not the actual law in the states in the proposed class). *See also Castano v. American Tobacco Co.*, 84 F.3d 734, 740-41 (5th Cir. 1996) (a multistate class consisting of nicotine-dependent persons who purchased and smoked cigarettes manufactured by the defendant tobacco companies was decertified because the district court failed to consider how variations in state law would affect predominance and superiority); *In re American Med. Sys., Inc.*, 75 F.3d 1069, 1085 (6th Cir. 1996) (characterizing the task of instructing a jury as "impossible" where state laws differ). *Cf. In re Mexico Money Transfer Litig.*, 267 F.3d 743, 746-47 (7th Cir. 2001) (noting that, although certification of litigation class actions under the consumer fraud statutes of numerous states generally is inappropriate, the same is not true in the context of settlement class actions where "no one need draw fine lines among state-law theories of relief.").