UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GREG CIMA, et al., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WELLPOINT HEALTH NETWORKS, INC., et al.,<br><br>Defendants. | Case No. 05-cv-4127-JPG |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

This matter comes before the Court on the motion to compel and the motion to extend the discovery deadline for oral depositions brought by plaintiffs Greg Cima, Diana Peek, Linda McMahon, Mike Beard, Sharon Beard, John Beckwith, Jr, and Stephen Jellen (Doc. 134, 141).[1] For the following reasons, the motions are **GRANTED in part** and **DENIED in part**.

### I. Introduction

The nature of the claims and the procedural history of this case, which was removed from state court to this Court in 2005 on the basis of 28 U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 (codified in scattered sections of 28 U.S.C.), has been outlined by the Court in earlier orders. *See, e.g., Cima v. Wellpoint Healthcare Networks, Inc.*, No. 05-CV-4127-JPG, 2006 WL 1914107 (S.D. Ill. July 11, 2006). Because it is

---

1. At a status conference in this matter conducted on January 17, 2008, the plaintiffs' counsel advised the Court that Diana Peek has died. A motion to substitute Mrs. Peek's daughters as plaintiffs in her stead is pending before United States Magistrate Judge Donald G. Wilkerson.

unnecessary to repeat that recitation here, the Court merely states a few salient facts of the case pertinent to resolution of the instant motions. The plaintiffs are former holders of health insurance policies issued through defendant RightCHOICE Insurance Company and/or its parent corporation defendant RightCHOICE Managed Care, Inc. (hereinafter, collectively, "RightCHOICE"). The plaintiffs allege that in 2001 defendant WellPoint Health Networks, Inc., ("WellPoint") acquired Blue Cross/Blue Shield of Missouri, RightCHOICE's parent corporation, in a merger from which RightCHOICE emerged as a wholly-owned subsidiary of WellPoint. The plaintiffs contend that, although at the time WellPoint acquired RightCHOICE it represented to the Illinois Department of Insurance that it had no plans to make material changes in RightCHOICE's business, in fact WellPoint intended to cause, and did cause, RightCHOICE to withdraw from the Illinois insurance market. As a result of the market withdrawal, the plaintiffs allege, RightCHOICE insureds were forced by WellPoint to convert to more expensive policies issued through defendants Unicare National Services, Inc., Unicare Illinois Services, Inc., and Unicare Health Insurance Company of the Midwest, (hereinafter, collectively, "Unicare") which are Illinois subsidiaries of WellPoint. RightCHOICE insureds who could not afford to convert to Unicare policies were compelled to seek coverage through other carriers or else do without health insurance.

The operative complaint in this cause alleges that the market withdrawal and conversion scheme executed by WellPoint with respect to RightCHOICE policyholders constitutes a breach of contract in that the withdrawal and conversion violated the renewability provisions of RightCHOICE policies. The complaint alleges also that the withdrawal and conversion scheme constitutes an unfair trade practice under the Illinois Consumer Fraud and Deceptive Business

Practices Act ("Consumer Fraud Act"), 815 ILCS 505/1-505/12.[2] The plaintiffs have moved to compel discovery with respect to the following six matters, set out in their motion to compel as follows:

> 1. What information and consideration WellPoint had and made regarding its merger with Blue Cross Blue Shield of Missouri/RightCHOICE.
> 2. What information and consideration WellPoint and Unicare had and made regarding the shutting down of RightCHOICE and conversion of insureds to Unicare.
> 3. Who and what was communicated by WellPoint/Unicare to the Illinois Division of Insurance related to the merger and then later regarding the conversion and market withdrawal?
> 4. The number of people involved, and the result over time to them, in other words, what happened to the RightCHOICE insureds overtime as a result of the market withdrawal and conversion to Unicare.
> 5. The execution of the market withdrawal and conversion to Unicare; including the form letters and information provided by WellPoint/Unicare and RightCHOICE to its insureds and agents regarding the merger and the conversion.
> 6. What other recent mergers WellPoint has completed, and if any had other similar market withdrawals and conversions schemes.

Doc. 134 at 3. Additionally, the plaintiffs request that the Court extend the deadline for conducting oral depositions in this case so that, upon completion of the document production outlined above, they may have thirty days to conduct oral depositions as to fourteen witnesses with knowledge of the matters addressed in the subject documents.[3] Having reviewed carefully the submissions of the parties and heard oral argument on the plaintiffs' motions, the Court now is prepared to rule.

---

2. Additionally, the plaintiffs moved for certification of a class of Illinois RightCHOICE policyholders, a request that the Court recently denied.

3. Those witnesses, who apparently are past or present employees of WellPoint and/or affiliated corporations, are: Kandy Waldie; Terry Hokinson; Mary Cronin Doyle; Mary Redshaw; James Faulkner; Kathleen Zorica; Leonard Schaeffer; Scott Geske; Sandra Van Trease; Cindy Augustine; John O'Rourke; Tom Geiser; Angela Braly; and Roger Bland.

## II. Discussion

As an initial matter, the Court notes the familiar standards governing discovery in the federal courts. Rule 26 of the Federal Rules of Civil Procedure 26 permits discovery into "any nonprivileged matter that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter." Fed. R. Civ. P. 26(b)(1). Rule 26 provides further, in pertinent part, "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. *Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence*." *Id*. (emphasis added). Rule 26 "permits discovery into . . . any matter, not privileged, that is relevant to the claim or defense of any party . . . . For the purpose of discovery, relevancy will be construed broadly to encompass 'any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *Chavez v. DaimlerChrysler Corp.*, 206 F.R.D. 615, 619 (S.D. Ind. 2002) (quoting *TIG Ins. Co. v. Giffin, Winning, Cohen & Bodewes*, No. 00 C 2737, 2001 WL 969037, at *1 (N.D. Ill. Aug. 24, 2001)). *See also Sykes v. Target Stores*, No. 00 C 5112, 2002 WL 554505, at *1 (N.D. Ill. Apr. 15, 2002) ("Discoverable information is not limited to that which would be admissible at trial. Information is relevant for purposes of Rule 26 . . . if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.").

In general, then, Rule 26 embodies a liberal discovery standard. *See, e.g., Hooker v. Norfolk S. Ry. Co.*, 204 F.R.D. 124, 126 (S.D. Ind. 2001) (citing *Settles v. Illinois Dep't of*

4

*Human Servs.*, No. 00 C 433, 2001 WL 987590, at *1 (N.D. Ill. Aug. 28, 2001)) (noting that the "Federal Rules of Civil Procedure are designed to promote liberal discovery in an effort to focus the issues for trial and to prevent unfair surprise."); *White v. Kenneth Warren & Son, Ltd.*, 203 F.R.D. 364, 366 (N.D. Ill. 2001) ("Liberal discovery is permitted in federal courts to encourage full disclosure before trial."); *Shapo v. Engle*, No. 98 C 7909, 2001 WL 204804, at *2 (N.D. Ill. Mar. 1, 2001) ("All relevant material is discoverable, and the definition of relevancy under the Federal Rules of Civil Procedure is extremely broad."). As a sister court in this Circuit put it, "[i]nformation is generally discoverable under the Federal Rules of Civil Procedure. The minimal showings of relevance and admissibility hardly pose much of an obstacle for an inquiring party to overcome[.]" *Anderson v. Hale*, No. 00 C 2021, 2001 WL 503045, at *3 (N.D. Ill. 2001). Additionally, "[t]he district court has wide discretion within the rules to determine the manner and course of discovery." *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130, U.A.*, 657 F.2d 890, 902 (7th Cir. 1981). *See also Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 943 (7th Cir. 1997) (district courts have extremely broad discretion in controlling discovery); *Brown-Bey v. United States*, 720 F.2d 467, 470 (7th Cir. 1983) (same).

Despite the presumption in favor of liberal discovery under Rule 26, the rule nonetheless authorizes courts to place restrictions on discovery in certain circumstances, stating, in pertinent part,

> On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C). *See also Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002) (noting that Rule 26 "empowers district courts to limit the scope of discovery if . . . the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive."); *Cook, Inc. v. Boston Scientific Corp.*, No. 01 C 9479, 2002 WL 406977, at *1 (N.D. Ill. Mar. 15, 2002) ("Discovery may be limited if the Court determines it is . . . unreasonably cumulative or duplicative . . . or if . . . the burden or expense of the proposed discovery outweighs its likely benefit."). Courts generally "look unfavorably upon significant restrictions placed upon the discovery process," and, correspondingly, the party opposing a discovery request has the burden "to show why a particular discovery request is improper." *Meyer v. Southern Pac. Lines*, 199 F.R.D. 610, 611-12 (N.D. Ill. 2001). Thus, as a rule, a party seeking an order limiting discovery has the burden of showing "good cause" for such an order, and the requisite showing of good cause entails "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements[.]" *Harrisonville Tel. Co. v. Illinois Commerce Comm'n*, 472 F. Supp. 2d 1071, 1077 (S.D. Ill. 2006) (quoting 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice & Procedure* § 2035 (1998 & Supp. 2006)). *See also Wilson v. Kautex*, No. 1:07-CV-60, 2008 WL 89881, at *3 (N.D. Ind. Jan. 7, 2008); *Hodgdon v. Northwestern Univ.*, 245 F.R.D. 337, 341 (N.D. Ill. 2007).

The foregoing principles are truisms, of course, but the Court believes that they bear repeating in this case in light of what appears to be a refusal on the part of the defendants to cooperate in discovery. The defendants argue that they are not required to comply with the discovery requests at issue because discovery at this time is limited to issues pertaining to class certification, whereas the discovery at issue pertains to the merits of the plaintiffs' claims. The Court does not agree. The scheduling orders entered in this case to date do not specify an absolute bifurcation between class certification-related discovery and merits discovery and, in any event, the two generally are closely intertwined. *See Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 n.12 (1978) ("Evaluation of many of the questions entering into determination of class action questions is intimately involved with the merits of the claims."); *Nelson v. U.S. Steel Corp.*, 709 F.2d 675, 679 (11th Cir. 1983) (explaining that evidence pertinent to the requirements for class certification under Rule 23 of the Federal Rules of Civil Procedure "is often intertwined with the merits."). More importantly, as discussed, when discovery requests are served upon a litigant, it is that litigant's burden, if he or she objects to the requested discovery for whatever reason, to bring a timely request for a protective order or else comply with the discovery requests. The rules of discovery are not to be taken lightly, and a party seeking discovery is entitled to expect timely and proper participation in discovery by adverse parties to ensure adequate preparation for trial. *See Richards-Wilcox Mfg. Co. v. Young Spring & Wire Corp.*, 34 F.R.D. 212, 213 (N.D. Ill. 1964) ("To properly prepare for [trial], . . . counsel must be given the benefit of proper pre-trial discovery . . . . No longer can we or should we protect archaic principles fostered to protect and promote what was once thought to be the desired sporting element of a trial – surprise. This element of surprise has departed with our modern Federal Rules of Civil

Procedure."). Correspondingly, just as a litigant whose deposition has been properly noticed is under a duty either to obtain a protective order or else appear for the deposition, *see Hepperle v. Johnston*, 590 F.2d 609, 613 (5th Cir. 1979); *Pioche Mines Consol., Inc. v. Dolman*, 333 F.2d 257, 269 (9th Cir. 1964); *Marriott Homes, Inc. v. Hanson*, 50 F.R.D. 396, 399 (W.D. Mo. 1970), so too the rules set out with specificity the time for objecting to interrogatories and requests for production. *See* Fed. R. Civ. P. 33(b), 34(b). In this case it appears that, instead of filing a timely motion for a protective order in response to the plaintiffs' discovery requests, the defendants decided to set themselves up as the arbiters of what is or is not relevant discovery in this case and simply refuse to comply with those requests. This behavior is not acceptable, and the Court does not wish to see a repetition of it in the course of this litigation.

Turning then to the issue of the discoverability of the documents sought by the plaintiffs, several categories of the discovery at issue appear to be relevant under Rule 26, including: "What information and consideration WellPoint had and made regarding its merger with Blue Cross Blue Shield of Missouri/RightCHOICE"; "What information and consideration WellPoint and Unicare had and made regarding the shutting down of RightCHOICE and conversion of insureds to Unicare"; "Who and what was communicated by WellPoint/Unicare to the Illinois Division of Insurance related to the merger and then later regarding the conversion and market withdrawal"; and "The execution of the market withdrawal and conversion to Unicare; including the form letters and information provided by WellPoint/Unicare and RightCHOICE to its insureds and agents regarding the merger and the conversion." Doc. 134 at 3. Accordingly, the Court holds that the plaintiffs are entitled to conduct discovery with respect to these topics. At the hearing conducted by the Court on the plaintiffs' discovery motions on January 17, 2008,

counsel for the defendants suggested that discovery pertaining to the merger in which WellPoint acquired RightCHOICE is likely to be voluminous. If so, the Court directs counsel for the parties to meet and confer in good faith with the aim of developing a workable method of producing the documents at issue. If after such good-faith negotiation the parties are unable to reach agreement, they may petition the Court for guidance as to resolution of any disputes that may have arisen.

With respect to certain other categories of discovery sought by the plaintiffs, the Court believes that the evidence sought is neither relevant nor likely to lead to relevant evidence, particularly in light of the Court's recent determination that this case may not proceed as a class action. For example, given that this case is not a class action, the Court sees no reason why the defendants should be required to produce discovery as to "[t]he number of people involved, and the result over time to them, in other words, what happened to the RightCHOICE insureds overtime as a result of the market withdrawal and conversion to Unicare." Doc. 134 at 3. Similarly, the Court sees no reason to require the defendants to turn over discovery about "other recent mergers WellPoint has completed, and if any . . . other similar market withdrawals and conversions schemes." *Id*. In view of the fact that this case has not been certified for class treatment, evidence regarding other market withdrawals and conversions executed by WellPoint would be admissible, if at all, only as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b). At the January 17 hearing the plaintiffs' counsel indicated that they were aware of at least one other market withdrawal and conversion executed by WellPoint similar to that involving RightCHOICE, and therefore the plaintiffs may direct discovery to the defendants regarding that market withdrawal

9

and conversion. With that exception, however, the Court does not believe that it is appropriate to subject WellPoint to a fishing expedition concerning every merger in which the company has been involved in the ten years preceding commencement of this suit merely for the sake of generating possible Rule 404(b) evidence.

The defendants point out that the plaintiffs' requested discovery likely requires production of information regarding group insurance plans that are employee benefit plans governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461. The defendants point out further that discovery as to ERISA plans is irrelevant, in light of ERISA's broad preemption of state-law claims relating to such plans. *See* 29 U.S.C. § 1144(a); *Egelhoff v. Breiner*, 532 U.S. 141, 146 (2001). The Court agrees with the defendants that discovery as to ERISA plans is neither relevant nor likely to lead to relevant evidence with respect to the plaintiffs' claims for breach of contract and violations of the Consumer Fraud Act. However, the Court cautions the defendants that, if they decline to produce discovery as to certain plans on the grounds that the subject plans are governed by ERISA, they will bear the burden of proving that the subject plans are within the scope of the statute. This should not be a particularly onerous burden, given that the definition of an employee benefit plan under ERISA is construed liberally in this Circuit. *See, e.g., Dwyer v. Unum Life Ins. Co. of Am.*, No. 03 C 1118, 2003 WL 22844234, at *2 (N.D. Ill. Dec. 1, 2003). In general, an employee benefit plan is within the scope of ERISA the plan if it satisfies the following elements: (1) it is a plan, fund, or program; (2) established or maintained; (3) by an employer or by an employee organization, or by both; (4) for the purpose of providing medical, surgical, hospital care, sickness, accident, disability, death, unemployment, or vacation benefits, apprenticeship or other training programs,

day care centers, scholarship funds, prepaid legal services, or severance benefits; (5) to participants or their beneficiaries. *See Ed Miniat, Inc. v. Globe Life Ins. Group, Inc.*, 805 F.2d 732, 738 (7th Cir. 1986). By the same token, an employer will not be deemed to have established or maintained an ERISA plan if all of the following requirements are met: (1) the employer did not make any contributions to the plan; (2) the employer left participation in the program completely to the discretion of employees; (3) without endorsing the program, the employer limited its functions with respect to the program to permitting an insurer to publicize the program to employees, collecting premiums through payroll deductions or dues checkoffs and remitting them to the insurer; and (4) the employer received no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs. *See* 29 C.F.R. § 2510.3-1(j); *Memorial Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 241 n.6 (5th Cir. 1990). Accordingly, if the defendants decline to produce evidence on the grounds that it relates to an ERISA plan, it will be the defendants' burden to show both that the *Ed Miniat* factors are met and that the subject plan does not come within the "safe harbor" created by 29 C.F.R. § 2510.3-1(j).

As a final matter, the plaintiffs request that the defendants re-produce to them certain documents that were discovered to the plaintiffs while this case was pending in state court before removal but which the plaintiffs were required to return to the defendants pursuant to a temporary restraining order issued by the state court. At the January 17 hearing the defendants' counsel indicated that they are willing to produce the requested documents. To the extent defendants assert the so-called "mediation privilege" as to any of the documents, the Court

expects any such assertion of privilege to be made in the form of a timely motion for a protective order, supported by a privilege log sufficient to enable the Court to ascertain the existence or non-existence of the privilege. The Court reiterates that, where discovery requests have been directed to a party, the onus is on that party to raise timely objections to requests that it believes are improper, or else to produce the requested discovery. A simple refusal to comply is not an option.[4]

### III. Conclusion

The plaintiffs' motion to compel (Doc. 134) and motion to extend the discovery deadline for oral depositions (Doc. 141) are **GRANTED in part** and **DENIED in part**, and the plaintiffs are given leave to direct discovery to the defendants and to conduct oral depositions subject to the restrictions outlined in this Order.

**IT IS SO ORDERED.**
**DATED: March 18, 2008**

> **s/ J. Phil Gilbert**
> **J. PHIL GILBERT**
> **DISTRICT JUDGE**

---

4. In this connection, the Court notes that it appears that one of the witnesses the plaintiffs seek to depose, Angela Braly, is WellPoint's general counsel. The Court is mindful of Justice Jackson's admonition that "[d]iscovery was hardly intended to enable a learned profession to perform its functions either without wits or on wits borrowed from the adversary." *Hickman v. Taylor*, 329 U.S. 495, 516 (1947) (Jackson, J., concurring). However, the Court will assume that Braly's deposition will go forward unless and until the defendants file a proper motion to prevent the deposition and obtain a protective order pursuant thereto.