UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

GREG CIMA, et al., individually and on
behalf of all others similarly situated,

Plaintiffs,

v.                                                      Case No. 05-cv-4127-JPG

WELLPOINT HEALTH NETWORKS,
INC., et al.,

Defendants.

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendants's Motion for Partial Summary Judgment on

Count III of Plaintiffs's First Amended Class Action Complaint (Doc. 179).  Plaintiffs have

Responded (Doc. 207) and Defendants have Replied (Doc. 209).

## BACKGROUND

The Court has outlined the nature of the claims and the procedural history of this case in

previous orders, and it is unnecessary to repeat that recitation in detail here.  Accordingly, the

Court merely will state a few salient aspects of this case that are pertinent to this Order.

Plaintiffs are former insureds of Defendant RightCHOICE Insurance Company and/or its parent

corporation Defendant RightCHOICE Managed Care, Inc. (hereinafter, collectively

"RightCHOICE").  Plaintiffs allege that in 2001 Defendant WellPoint Health Networks, Inc.,

("WellPoint") acquired RightCHOICE through a merger from which RightCHOICE emerged as

a wholly-owned subsidiary of WellPoint.  Plaintiffs contend that WellPoint acquired

RightCHOICE for the purpose of causing the latter to withdraw from the Illinois insurance

market, thereby forcing RightCHOICE insureds to convert to more expensive policies issued

1

through defendants Unicare National Services, Inc., Unicare Illinois Services, Inc., and Unicare

Health Insurance Company of the Midwest (hereinafter, collectively, "Unicare"), which are

Illinois subsidiaries of WellPoint.  Plaintiffs's operative complaint asserts claims for breach of

contract and unfair trade practices in violation of the Illinois Consumer Fraud and Deceptive

Business Practices Act ("ICFA"), 815 ILCS 505/1-505/12.

Defendants have moved for summary judgment as to Plaintiffs's claims for breach of

contract, which allege that the withdrawal of RightCHOICE from the Illinois insurance market

constitutes a breach of the renewability provisions of Plaintiffs's policies with RightCHOICE.

WellPoint and Unicare contend that as non-signatories to the RightCHOICE policies they cannot

be held liable for breach of the policies.  Plaintiffs have responded that Wellpoint and Unicare

assumed the contractual duties of the RightCHOICE policies by way of the corporate merger.

RightCHOICE contends that there was no breach of the policies because RightCHOICE's

market withdrawal was proper under relevant policy terms, which incorporated provisions of the

Illinois Health Insurance Portability and Accountability Act, 215 ILCS 97/1-97/99 (HIPAA).

Plaintiffs counter that RightCHOICE never really withdrew from the Illinois market, and

therefore breached its contractual duty to renew Plaintiffs's policies.

**ANALYSIS**

Summary judgment is proper where "the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material fact

and that the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c); *see Celotex*

*Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.,* 211 F.3d 392,

396 (7th Cir. 2000).  The Court construes all facts in the light most favorable to the nonmoving

party and draws all justifiable inferences in the nonmoving party's favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *Spath,* 211 F.3d at 396.

The moving party has the burden of establishing that there is no genuine issue of material fact. *Celotex Corp.,* 477 U.S. at 323. Where the moving party fails to meet its strict burden of proof, a court cannot enter summary judgment for the moving party even if the opposing party fails to present relevant evidence in response to the motion. *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992). If it meets this burden, the nonmoving party must set forth facts that demonstrate the existence of a genuine issue of material fact. Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 322-26; *Johnson v. City of Fort Wayne,* 91 F.3d 922, 931 (7th Cir. 1996). The nonmoving party must do more than cast "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986); *Michas v. Health Cost Controls of Ill., Inc.,* 209 F.3d 687, 692 (7th Cir. 2000). Rather, the nonmoving party must demonstrate to the Court that the evidence is such that a reasonable jury could return a verdict in his favor. *Anderson,* 477 U.S. at 248; *Insolia v. Phillip Morris, Inc.,* 216 F.3d 596 (7th Cir. 2000). Mere assertions of a factual dispute unsupported by probative evidence will not prevent summary judgment. *Anderson,* 477 U.S. at 248-250.

I.      **Breach of Contract Claims Against Unicare and Wellpoint**

As a general rule, one who is not a party to a contract cannot be held liable for its breach. *Gallagher Corp. v. Russ*, 721 N.E.2d 605, 612 (Ill. App. Ct. 1999). While admitting they were not parties to the contract, Plaintiffs claim Defendants Unicare and Wellpoint are liable for breach as RightCHOICE's successors. *See* 215 ILCS 5/166; 805 ILCS 5/11.50(a)(5); *Gray v. Mundelein Coll.,* 695 N.E.2d 1379, 1388 (Ill. App. Ct. 1998).

A.      **Successor Liability**

Wellpoint became the parent company to RightCHOICE as a result of a "triangular

merger." Wellpoint created a wholly-owned subsidiary, RWP Acquisition Corp. (RWP), solely

for purposes of the merger. Wellpoint caused RWP to merge with Missouri Care, the parent

company of RightCHOICE. Under the terms of merger agreement, Missouri Care emerged as

the surviving corporation. In this way, Missouri Care became a wholly-owned subsidiary of

Wellpoint, with RightCHOICE remaining a wholly-owned subsidiary of Missouri Care.

Defendants claim that no entity ever succeeded to RightCHOICE's obligations, as

RightCHOICE was not a party to the merger.

Under the Illinois Insurance Code, Delaware law determines the effect of the merger.

*See* 215 ILCS 5/166(2)(a). Delaware law provides that following a merger "all debts, liabilities

and duties of the respective constituent corporations shall thenceforth attach to said surviving or

resulting corporation, and may be enforced against it to the same extent as if said debts,

liabilities and duties had been incurred or contracted by it." 8 Del.C. § 259(a). Therefore,

Missouri Care, the surviving corporation, assumed the contractual liabilities of RWP, the holding

company created by Wellpoint for purposes of the merger. However, Plaintiffs have not

articulated to the Court how this merger resulted in the assumption by any other entity of

RightCHOICE's contractual liabilities. While it is true that, through the merger, RightCHOICE

became a subsidiary of Wellpoint, it is also true that a corporation is ordinarily not liable for the

legal obligations of its subsidiaries. *U.S. v. Bestfood*, 524 U.S. 51, 61-2 (1998). Plaintiffs have

pointed to no provision of the merger under which Wellpoint assumed the legal obligations of

either Missouri Care or RightCHOICE. Neither have Plaintiffs pointed to any provision of law

that would operate to impose such liability on Wellpoint.

Instead, Plaintiffs point out that Wellpoint admits it is the parent company of both Unicare and RightCHOICE. Plaintiffs further argue that both Unicare and Wellpoint are "issuers" of health care insurance and so must comply with HIPAA. However, even assuming both of these propositions is correct, the Court is at a loss as to how they result in the imposition on Unicare and/or Wellpoint of RightCHOICE's contractual obligations. Plaintiffs appear to be making the argument that both RightCHOICE and Unicare are "shell corporations," and that, therefore, the Court should ignore the corporate form and hold Wellpoint, as the "ultimate owner," responsible for the contractual obligations of RightCHOICE.

**B.      Liability as Alter Ego**

A corporation is presumed to be separate and distinct from its shareholders, and a party wishing to overcome that presumption bears the burden of showing that the corporation is, in fact, a sham. *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 378-9 (7th Cir. 2008). In general, courts are reluctant to pierce the corporate veil, and will only do so "when there is such unity of interest and ownership that the separate personalities of the corporation and the . . . other corporation no longer exist, and when adherence to the fiction of a separate corporate existence would sanction a fraud or promote injustice." *Id*. (quoting *Van Dorn Co. v. Future Chem. & Oil Corp.*, 753 F.2d 565, 569-70 (7th Cir. 1985)). "The separate corporate entities of two corporations may not be disregarded merely because one owns the stock of another. . . ." *Id*. at 380. A court may properly disregard the corporate form only when there is evidence that the "sham" corporation was inadequately capitalized, failed to issue stock, keep corporate records, or observe corporate formalities, commingled its funds with the other

5

corporation, or generally acted as a "mere facade for the operation of the dominant stockholder[]." *Id*. at 379. The mere fact that a parent and subsidiary corporation have common officers and directors "is insufficient to justify disregarding the corporate form because it is a common business practice that exists in most parent and subsidiary relationships." *Id*. at 381.

Here, Plaintiffs have only presented two pieces of evidence in support of piercing the corporate veil and holding Unicare or Wellpoint liable for the contractual obligations of RightCHOICE. The first is that Unicare and Wellpoint had some officers in common. This fact alone is not enough to justify disregarding the corporate form. Besides, Plaintiffs have failed to present any evidence that either Unicare or Wellpoint had officers in common with the contracting party, RightCHOICE.

The second piece of evidence presented by Plaintiffs in support of piercing the corporate veil is equally tenuous. Plaintiffs point out that after the decision was made to withdraw RightCHOICE from the Illinois market, RightCHOICE, Unicare and Wellpoint acted in a coordinated manner to retain RightCHOICE insureds within the Wellpoint "family" by converting their policies to Unicare policies. The Court's use of the passive voice in the preceding sentence is not an accident. Plaintiffs have presented no evidence from which the Court can establish which entity made the decision to have RightCHOICE withdraw from the Illinois market or why.

Instead Plaintiffs rely on the fact that Wellpoint and Unicare profited from RightCHOICE's withdrawal by snapping up former RightCHOICE insureds to imply that Wellpoint and Unicare must have *directed* RightCHOICE to withdraw from the market. However, the inference is not an inevitable one. The Court could just as easily draw the

inference that the RightCHOICE corporation independently made the decision to withdraw from

the Illinois market, and its parent and sister corporations merely took steps to profit from that

withdrawal, much as any competing business would.  Plaintiffs have not shown the Court any

direct evidence that Unicare or Wellpoint dominated or controlled the RightCHOICE

corporation or its decision to withdraw from the Illinois market.  Plaintiffs have presented no

evidence tending to show that RightCHOICE was undercapitalized, or that it failed to observe

corporate formalities, or that it commingled funds with Unicare or Wellpoint.  Plaintiffs have

simply not put forward enough evidence for the Court to justify disregarding the corporate form.[1]

At best Plaintiffs have only "cast some metaphysical doubt as to the material facts;" this is

insufficient to avoid summary judgment.  Because Plaintiffs have shown the Court no way in

which either Unicare or Wellpoint can be held liable for breach of contracts entered into by

RightCHOICE, Unicare and Wellpoint are entitled to summary judgment on the breach of

contract claims.

**II.      Breach of Contract Claims Against RightCHOICE**

Defendant RightCHOICE admits it had contractual relationships with Plaintiffs, but

asserts that it is entitled to summary judgment on the breach of contract claims against it because

Plaintiffs can point to no term of the contracts that RightCHOICE actually breached.  Plaintiffs

counter that RightCHOICE did not really withdraw from the Illinois market, but continued doing

business in Illinois via its corporate parent, Wellpoint, and its corporate sister, Unicare.

Plaintiffs contend that this was a breach of RightCHOICE's contractual obligation to comply

---

[1]The Court notes that Plaintiffs's response to the instant motion was filed on May 23, 2008, more than two months after the Court's resolution of the parties's discovery dispute (Doc. 195).

with the provisions of Illinois HIPAA.  In Plaintiffs's own words, their "claim of breach of

insurance policy rests on the fact that RightCHOICE was not actually withdrawing or

discontinuing its policies, it was simultaneously and in coordinated fashion, at the direction of

Wellpoint, converting the very same insureds to an on-going subsidiary, Unicare."  In other

words, Plaintiffs seek to prove that RightCHOICE and Unicare are alter egos and that both are

under the direction and control of Wellpoint.  Once again, Plaintiffs must overcome the

presumption that a corporation is separate and distinct from its shareholders by presenting

evidence that its separate existence is illusory.  *Judson Atkinson Candies*, 529 F.3d at 378.  As

analyzed above, Plaintiffs have failed to present evidence from which the Court could reasonably

conclude that RightCHOICE and Unicare are merely "shell corporations" acting under the

control and direction of Wellpoint.  Because Plaintiffs have not shown that RightCHOICE and

Unicare are alter egos, Plaintiffs cannot sustain their argument that RightCHOICE did not

legitimately withdraw from the Illinois market as required by HIPAA.  Accordingly, Plaintiffs

have not shown that RightCHOICE breached any of the provisions of its contracts with

Plaintiffs.  RightCHOICE is therefore entitled to summary judgment on the breach of contract

claims.

## CONCLUSION

The Court **GRANTS** Defendants's Motion for Partial Summary Judgment (Doc. 179)

and **DIRECTS** the Clerk of Court to enter judgment accordingly at the close of this case.

**IT IS SO ORDERED.**
**DATED: October 22, 2008**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**